Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/03/2018 08:10 AM CDT

State of Nebraska, appellee, v.
Luke A. St. Cyr, appellant.
___ N.W.2d ___

Filed July 3, 2018.    No. A-17-372.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.
3. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?
4. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
5. **Sentences.** When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense.
6. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

7. **Criminal Law: Restitution: Damages.** Neb. Rev. Stat. § 29-2280 (Reissue 2016) vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which a defendant is convicted.

8. **Sentences: Restitution: Damages.** After the sentencing court determines that a conviction warrants restitution, it then becomes the sentencing court's factfinding responsibility to determine the victim's actual damages and the defendant's ability to pay.

9. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

10. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

11. **Effectiveness of Counsel: Pleas: Proof.** To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial.

12. **Effectiveness of Counsel: Proof.** The two prongs of the ineffective assistance test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), deficient performance and prejudice, may be addressed in either order.

13. **Effectiveness of Counsel: Sentences.** Neb. Rev. Stat. §§ 29-2261 and 29-2204.03 (Reissue 2016) give the court the discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed; neither statute provides that a defendant can or should request the evaluations. Trial counsel cannot be deficient for failing to request evaluations that the court itself could have ordered, but in its discretion deemed unnecessary.

Appeal from the District Court for Madison County: JAMES G. KUBE, Judge. Affirmed in part, sentence of restitution vacated, and cause remanded with directions.

Ryan J. Stover, of Stratton, DeLay, Doele, Carlson & Buettner, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Luke A. St. Cyr pled guilty to one count of first degree assault pursuant to Neb. Rev. Stat. § 28-308 (Reissue 2016), and the district court for Madison County sentenced him to 40 to 50 years' imprisonment and ordered him to pay $100,000 in restitution. St. Cyr argues that his sentence is excessive and that his counsel was ineffective. For the following reasons, we affirm in part, but because we find the court did not meaningfully consider St. Cyr's ability to pay restitution, we vacate the sentence of restitution and remand the cause with directions.

## II. BACKGROUND

On December 13, 2016, the State filed an information charging St. Cyr with first degree assault pursuant to § 28-308, a Class II felony. The offense was alleged to have occurred on October 28.

On January 30, 2017, pursuant to a plea agreement, St. Cyr pled guilty to the charge in the information in exchange for the State's agreement to not file additional charges arising from the incident. The factual basis was derived from statements by St. Cyr, his attorney, and the State. St. Cyr's counsel said that after a "brief verbal altercation," St. Cyr "punched the victim several times, knocked the victim out and then [St. Cyr] proceeded to kick the victim several times in the head and cause serious bodily injury." St. Cyr told the court that "I punched him and I kicked him and I assaulted him." The State added that the police responded to a call at a bar in Norfolk, Madison County, Nebraska. They found the victim bleeding, unable to talk, and unable to get up. The victim was taken to a hospital, and

the doctors that continued to treat the victim would have indicated and testified that the injuries sustained by the victim fit the definition of serious bodily injury because there was a substantial risk from the injuries that . . . the victim may have died and it required . . . medical intervention to keep him alive.

The State said there was a videotape, and the evidence would show that the victim did nothing wrong and that there was nothing that would justify the use of force against the victim.

The district court accepted St. Cyr's guilty plea to the information and later sentenced him to 40 to 50 years' imprisonment, with 111 days' credit for time served. The court also ordered him to pay restitution in the amount of $100,000. St. Cyr appeals.

## III. ASSIGNMENTS OF ERROR

St. Cyr assigns as error that (1) the district court imposed an excessive sentence both in the length of incarceration ordered and by ordering him to pay restitution without considering his ability to pay and (2) he received ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

[1] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dyer*, 298 Neb. 82, 902 N.W.2d 687 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

[2,3] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did

not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *Id*.

## V. ANALYSIS

### 1. Excessive Sentence

#### (a) Length of Incarceration

St. Cyr assigns the district court erred by sentencing him to 40 to 50 years' imprisonment, instead of a lesser term of incarceration. St. Cyr was convicted of first degree assault pursuant to § 28-308, which is a Class II felony. Under Neb. Rev. Stat. § 28-105 (Reissue 2016), a Class II felony is punishable by 1 to 50 years' imprisonment. St. Cyr's sentence was therefore within the statutory limits.

[4-6] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. See *id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

St. Cyr was 32 years old at the time of sentencing. He was single and had no dependents. He has a high school diploma and reportedly attended one semester of college. St. Cyr's employment history is "inconsistent due to being in and out of incarceration." He reports that both of his parents suffered

from addiction to alcohol in the past, but that his father had been sober for 10 to 15 years and his mother had been sober for 20 years. All of his siblings have suffered from addiction to alcohol in the past, but they were all sober at the time of his presentence investigation. St. Cyr first consumed alcohol at age 11 and reported regular use by age 14. He indicated he attended substance abuse treatment and relapsed in 2015 or 2016, and he said that each of his convictions originally began with the use of alcohol. He "described a desire to consume alcohol in the future because he feels hopeless." He also uses marijuana and peyote. St. Cyr "recalled being traumatized by a combination of his parent[s'] alcoholism and growing up in Winnebago, which he described as a hostile and violent environment." He "described how 'retaliation is rampant on the reservation'" and indicated three of his brothers have "been injured due to retaliatory assaults"—one of his brothers suffered a gunshot wound to the face, one was started on fire, and another has been beaten and stabbed. He reported being the victim of violence or abuse on numerous occasions, including being stabbed in the chest twice during fights in 1998 and 2003. He reported being diagnosed with anxiety and depression during his incarceration in federal prison and attempting suicide numerous times between the ages of 17 and 21 (since then his suicidal thoughts "'come and go'"). St. Cyr "identified his excessive alcohol consumption and poor choice in peers as problematic, noting he desires immediate substance abuse intervention."

St. Cyr's criminal history includes convictions for possession of marijuana (community service and 1 year's probation); attempted robbery (36 months' probation revoked and subsequently sentenced to 14 to 18 months' imprisonment); third degree assault (365 days' jail time); and burglary and assault with a dangerous weapon resulting in serious injury in "Indian Country" ("6 years Bureau of Prisons [and] 3 years supervised release"; probation revoked and subsequently sentenced to "12 months federal prison").

Regarding his current conviction, St. Cyr told the probation officer that he went to a friend's house in Winnebago, Nebraska, and that two other females he did not know were there. They were all drinking. The females wanted to go to Norfolk, and they all headed that way. On the drive, one of the women received telephone calls which became "heated." She told St. Cyr and the others that the caller would often beat her up. St. Cyr "felt compelled to offer [himself] as her champion" and said he would "'kick his ass.'" When they arrived in Norfolk, they encountered the man, but nothing happened and they parted ways. St. Cyr and his group went to a bar and got "kicked out" after a bar fight. After St. Cyr and his friend left a second bar, a person asked "if [they] were Indians." St. Cyr "became offended and started an argument." St. Cyr believed that the argument had escalated into a fight and that he had "made the first move." He said, "I assaulted a man I never . . . knew," and the man received serious injuries. St. Cyr explained that he assaulted the victim in the current matter so severely because St. Cyr had been "involved in two past assaults in which he allowed the victim to regain consciousness, [and as] a result, those individuals came to and retaliated against [him], assaulting him severely." St. Cyr said, "'This is why I went so far'"; "'I would never have done this if sober.'" The record reflects that the victim suffered extensive injuries as a result of the assault, including being placed on life support and experiencing a coma; due to the extent of the injuries sustained, the victim has been unable to return to employment and has accumulated a massive amount of medical debt.

As part of the presentence investigation, the probation officer conducted a "Level of Service/Case Management Inventory." St. Cyr was assessed at a "very high risk level for recidivism." The probation officer recommended that St. Cyr be sentenced to a term of incarceration.

At the sentencing hearing, the court noted it had read through the facts and St. Cyr's statement and still did not understand what caused the "pretty violent incident." St. Cyr

said that it was "somewhat motivated by the people [he] was with, but still that [wasn't] cause for such a horrible act to happen to another person." He said, "I already suffer from a lot of mental health issues, but when it comes to alcohol, it just brings out the worse [sic] in me. So I guess I really don't have really nothing to say to support it or justify it. It was horrible. I'm ashamed of it." He acknowledged that he did not know the victim and that the victim did not make movements or threatening gestures toward him.

The State called the victim's brother to testify at the sentencing hearing. The brother testified that the victim was "lifeflighted" to a medical center, was given a "30-percent chance of living," and "was hooked to every machine available, even for breathing, feeding tubes. Numerous IV's." The brother testified that the victim

> experienced a very heavy head injury, brain trauma. They were even talking about doing surgery and putting in drains and everything else due to the swelling on his brain. He had a fractured skull across his left side. His nose was broke[n]. It was pretty extensive, where they were so worried about the vertebrae in his neck that they left the collar on for an extended period of time.
>
> They didn't even try attempting to back off the breathing machine for approximately ten days. He was in basically a medically-induced coma just to see if he would even breathe on his own again.

The victim "had no vision at that time" and had broken ribs. Because of the brain injury, he has short-term memory loss and did not even recognize his mother. He was in the hospital for "[a]bout a month." The victim (25 years old at the time of St. Cyr's sentencing hearing) was self-employed as a contractor and has no insurance, and his Medicaid was denied, so they could not get him the recovery therapy he needed at any rehabilitation facilities.

The State also played "actual video from behind the bar" from an outside camera (which video does not appear in our record).

The State asked for a "significant amount of incarceration." St. Cyr's counsel noted his client's background and said "it doesn't justify anything," but "[i]t just explains an unfortunate convergence of everything that was brought in where he was that night." And St. Cyr apologized to the victim's family on the record.

The court said, "I don't know if I've ever seen anybody beaten this bad before." The court further said:

> [W]atching that video was pretty shocking. . . . I don't know if I've ever seen anything like that before and I don't think I ever want to. It's just a brutal attack. . . . [C]learly this victim was unconscious. When you continued to kick and stomp at his head and, you know, that's just something I just don't understand. . . .
>
> . . . It seemed to me, at least from what I understand from the police reports and from watching the video and the comments that have been made, that this was pretty much non-provoked. . . .
>
> You may not have killed this victim . . . but you definitely have altered his life in a very negative way and who knows whether he will fully recover ever from these injuries.

The court found that St. Cyr was not a qualified candidate for probation and that there was a substantial likelihood of his reoffending in a similar manner. The court determined that "the most effective recourse" was incarceration and sentenced him to 40 to 50 years' imprisonment.

In his brief, St. Cyr argues that the district court "did not properly consider [his] rehabilitative needs in light of his background, his acknowledgment of responsibility, and his willingness to enter a plea of guilty, saving the State the expense of and the victim the trauma of trial." Brief for appellant at 14. He argued a reduced sentence would have been more appropriate. However, upon our review of the record and consideration of the relevant sentencing factors in this case, we find the district court did not abuse its discretion in the length of the prison sentence ordered.

### (b) Restitution

St. Cyr argues that the district court erred in ordering him to pay restitution in the amount of $100,000, without conducting a meaningful examination of his ability to pay that amount. The State asserts, "While no one objected to the imposition of restitution even when it was imposed, . . . actions which would ordinarily waive the argument on appeal, it is still plain error since the imposition of restitution did not comply with state statutes." Brief for appellee at 13. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

[7] A sentencing court may order the defendant to make restitution for the actual physical injury or property damage or loss sustained by the victim as a direct result of the offense for which the defendant has been convicted. Neb. Rev. Stat. § 29-2280 (Reissue 2016). Section 29-2280 vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which the defendant is convicted. *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013). According to Neb. Rev. Stat. § 29-2281 (Reissue 2016):

> To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim. In considering the earning ability of a defendant who is sentenced to imprisonment, the court may receive evidence of money anticipated to be earned by the defendant during incarceration. . . . The court may order that restitution be made immediately,

in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later.

Further, if the offense results in bodily injury, the court may require payment of necessary medical care, including, but not limited to, physical or psychological treatment and therapy, and payment for income lost due to such bodily injury. Neb. Rev. Stat. § 29-2282 (Reissue 2016).

[8] After the sentencing court determines that a conviction warrants restitution, it then becomes the sentencing court's factfinding responsibility to determine the victim's actual damages and the defendant's ability to pay. *State v. Ramirez, supra*. An evidentiary hearing is required to support a restitution order under § 29-2281, and restitution should be based on evidence of both actual damages and the defendant's ability to pay. See *State v. Holecek*, 260 Neb. 976, 621 N.W.2d 100 (2000). Restitution ordered by a court pursuant to § 29-2280 is a criminal penalty imposed as a punishment for a crime and is part of the criminal sentence imposed by the sentencing court. *State v. Holecek, supra*.

The victim's brother testified at the sentencing hearing. He testified about the extent of the victim's injuries and some of the medical costs, saying it was "well over a hundred thousand." And the presentence investigation report contains copies of the victim's medical bills that total well over $100,000—his medical center bill alone was over $100,000, his "life-flight" bill was $59,999, and there were numerous other medical bills totaling several thousands of dollars.

However, as noted by the State, there was no consideration by the court of St. Cyr's ability to pay. In fact, at the sentencing hearing, the State indicated St. Cyr "has been incarcerated . . . and has no financial means. We're not officially seeking restitution, but the restitution . . . is clearly in the [presentence investigation report] as to what medical bills are still owed." The court asked St. Cyr if he had any money to pay for the medical bills; his response was no. The court then

asked St. Cyr how he thought the bills would get paid, and he responded: "[I]f you were to give me the bill for the restitution, I would try to do my best to pay it off. Day by day, year by year, however it can be done."

The district court stated: "I will also order restitution, even though I'm sure you won't ever be able to pay it, but I'm going to order it, in the amount of $100,000. Clearly the medical bills that I've reviewed add up to more than that." The court did not state how restitution of $100,000 would be paid by St. Cyr, especially given his lengthy term of incarceration.

Although the district court considered St. Cyr's ability to pay the restitution from the standpoint that the court concluded St. Cyr "won't ever be able to pay it," the court did not state when and how the restitution was to be paid or whether it was to be paid immediately, in installments, or within a specified period of time. In light of the applicable law, we find plain error and must vacate the restitution portion of St. Cyr's sentence, remanding the cause back to the trial court for proceedings that are consistent with this opinion and the statutory factors set forth in § 29-2281. See *State v. Mick*, 19 Neb. App. 521, 808 N.W.2d 663 (2012) (finding record did not indicate trial court meaningfully considered factors mandated by § 29-2281 with respect to defendant's ability to pay restitution; trial court's order regarding restitution vacated and cause remanded to trial court for proceedings consistent with appellate opinion and statutory factors set forth in § 29-2281).

## 2. Effectiveness of Counsel

[9] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can

be resolved. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

[10-12] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id*.

St. Cyr contends that his trial counsel was ineffective because counsel "failed to utilize all means available to place mitigating evidence before the sentencing court, prior to sentencing." Brief for appellant at 22. More specifically, he argues counsel could have offered letters of support for St. Cyr as mitigating evidence. He also argues that counsel could have motioned the court to utilize "the evaluations authorized in §§29-2261 or 29-2204.03." Brief for appellant at 25. St. Cyr claims, "It is conceivable that had trial counsel done so," then "a more appropriate sentence would have been imposed." Brief for appellant at 25 and 26.

Neb. Rev. Stat. § 29-2261(5) (Reissue 2016) states that before imposing sentence, the court may order the offender to submit to psychiatric observation and examination for a period not exceeding 60 days or such longer period as the court determines to be necessary for that purpose. And Neb. Rev. Stat. § 29-2204.03(1) (Reissue 2016) states:

> When the court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis for determining the sentence to be imposed than

has been provided by the presentence report required by section 29-2261, the court shall commit an offender to the Department of Correctional Services for a period not exceeding ninety days. The department shall conduct a complete study of the offender during that time, inquiring into such matters as his or her previous delinquency or criminal experience, social background, capabilities, and mental, emotional, and physical health and the rehabilitative resources or programs which may be available to suit his or her needs.

[13] Both §§ 29-2261 and 29-2204.03 give the court the discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed; neither statute provides that a defendant can or should request the evaluations. Trial counsel cannot be deficient for failing to request evaluations that the court itself could have ordered, but in its discretion deemed unnecessary.

Furthermore, St. Cyr does not say who would have provided letters of support (or what information those letters would have contained). See, generally, *State v. Abdullah*, 289 Neb. 123, 133, 853 N.W.2d 858, 867 (2014) (showing witnesses whom defendant advised counsel would have been "'beneficial'" to defendant's case at trial raises potential issues of deficient performance and prejudice; but vague assertion referring to "'at least two'" witnesses seems little more than placeholder; "[w]ithout such specific allegations, the postconviction court would effectively be asked to '"conduct a discovery hearing to determine if anywhere in this wide world there is some evidence favorable to defendant's position"'").

St. Cyr does not say what other information his attorney should have presented to provide "a more complete picture" of St. Cyr. Brief for appellant at 25. In his brief, he mentions that he was the product of dysfunction and violence, that he had post-traumatic stress disorder, and that alcohol contributed to the events. However, St. Cyr himself provided all of this

information during the presentence investigation, and the court considered that information. We cannot say that St. Cyr's trial counsel was deficient. But even if trial counsel was deficient, St. Cyr cannot establish prejudice based on his counsel's failure to offer mitigating factors. The court read the presentence investigation report which, as set forth previously in this opinion, went into great detail about St. Cyr's background and the struggles he had encountered. Even in light of this information, the sentence imposed was not excessive, as we have concluded. The result of the proceeding would not have been different had counsel offered additional information regarding St. Cyr's social background, capabilities, rehabilitative needs, and mental, emotional, and physical health. Considering the circumstances of the offense, St. Cyr's criminal history, and his history of alcohol abuse, argument from counsel or other information reiterating the same background factors that St. Cyr himself provided would not have resulted in a lesser sentence. Because St. Cyr cannot show prejudice, his claim of ineffective assistance of counsel fails.

## VI. CONCLUSION

We affirm the district court's sentencing order imposing 40 to 50 years' imprisonment; however, the restitution portion of the sentence is vacated, and the cause is remanded for proceedings consistent with this opinion.

AFFIRMED IN PART, SENTENCE OF RESTITUTION VACATED,
AND CAUSE REMANDED WITH DIRECTIONS.