IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. MEAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

WESLEY A. MEAD, APPELLANT.

Filed October 25, 2022.    No. A-22-010.

Appeal from the District Court for Sherman County: KARIN L. NOAKES, Judge. Affirmed.

Christopher P. Wickham, of Sennett, Duncan, Jenkins, & Wickham, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Wesley A. Mead appeals from his plea-based convictions in the district court for Sherman County. He alleges that his pleas were not entered intelligently and voluntarily, that his sentences are excessive, and that his trial counsel was ineffective. Based on the reasons that follow, we affirm.

### BACKGROUND

Mead was originally charged with 11 felonies, all related to sexual conduct involving his minor stepdaughter. Pursuant to a plea agreement, he pled no contest to one count of terroristic threats, a Class IIIA felony; one count of first degree sexual assault of a child, a Class IB felony; and one count of unlawful intrusion, a Class IV felony. The State dismissed the remainder of the original charges.

- 1 -

At the plea hearing, the State provided the following factual basis:

Between December 2019 and May 2021, Mead picked up his stepdaughter, born in 2005, by the neck, pulled her shorts off, and threatened to rape her; he did not assault her at the time but did so later that evening. Mead instigated and continued a sexual relationship with the victim that included oral, anal, and vaginal penetration, and began after the terroristic threats. Mead placed a smoke detector in the sole bathroom of the home he shared with his stepdaughter. There was a camera in the smoke detector which caught video and still pictures of the victim nude in the shower; those images and video were located on a cell phone belonging to Mead. All events occurred in Sherman County, Nebraska.

The district court found Mead guilty of the charges. The court sentenced Mead to 2 to 2 years' imprisonment for the terroristic threats conviction; 30 to 40 years' imprisonment for the first degree sexual assault of a child conviction (the first 15 years are a mandatory minimum); and 2 to 2 years' imprisonment for the unlawful intrusion conviction. The sentences were ordered to be served consecutively.

## ASSIGNMENTS OF ERROR

Mead assigns that (1) his no contest pleas were not entered intelligently and voluntarily, (2) the district court abused its discretion by imposing excessive sentences, and (3) his trial counsel was ineffective in failing "to depose material witnesses prior to trial and/or plea" and in failing "to file a motion to obtain a psychological evaluation prior to sentencing for mitigation purposes."

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Voluntariness of Plea.*

Mead first assigns that his no contest pleas were not entered voluntarily and intelligently. To support a finding that a plea of guilty or nolo contendere has been voluntarily and intelligently

made, the court must (1) inform the defendant concerning (a) the nature of the charge, (b) the right to assistance of counsel, (c) the right to confront witnesses against the defendant, (d) the right to a jury trial, and (e) the privilege against self-incrimination; and (2) examine the defendant to determine that he or she understands the foregoing. *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011). Additionally, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. *Id.* A voluntary and intelligent waiver of the above rights must affirmatively appear from the face of the record. *Id.*

A valid guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right of confrontation, and the privilege against self-incrimination; but, a valid guilty plea does not waive the constitutional right to counsel because the right to counsel is not restricted to the actual trial on the merits. *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997).

In the present case, the trial court advised Mead of his right to a jury trial, to confront and cross-examine witnesses against him, to require witnesses to testify on his behalf, to have the State prove that he committed the offenses charged beyond a reasonable doubt, to remain silent, to be represented by counsel, and to appeal his conviction. The trial court informed him that by pleading guilty or no contest, he would be giving up the rights previously explained, with the exception of the right to counsel and the right to appeal. The court also informed Mead of the charges and possible penalties and Mead confirmed that he understood the charges and penalties.

Mead asserts that, although the trial court informed him of his rights prior to accepting his no contest pleas and told him that he would be giving up certain rights, it never asked him if he understood the rights he would be waiving and he never expressed a voluntary and intelligent waiver of his rights. Mead relies on *State v. Hays, supra*, where the Nebraska Supreme Court concluded that a guilty plea is valid only if the record affirmatively shows that a defendant understands that by pleading guilty he waives his right to a jury trial, his right to confront witnesses against him, and his privilege against self-incrimination, or otherwise affirmatively shows an express waiver of said rights.

Although the court did not specifically ask Mead if he understood the rights he was waiving by pleading no contest, the record as a whole shows that Mead understood the rights he was waiving. As previously stated, the court explained Mead's rights and told him he would be waiving certain rights by pleading no contest. Mead did not express a lack of understanding about what the court was saying and there was nothing in the record to indicate he did not understand. After explaining Mead's rights, the court asked Mead if he could read, write, and understand the English language, and Mead answered in the affirmative. Mead also indicated, when asked by the court, that he was not under the influence of alcohol or any mind-altering substance, and was not taking any prescriptions that affected his judgment. The court next asked Mead if he was able to understand what the court was saying and Mead responded, "Yes." The court then noted that it appeared Mead was responding logically to the questions being asked.

The court next explained the plea agreement and Mead waived his rights to have the amended information served and read. The court explained the charges and Mead stated that he understood the charges. When the court subsequently explained the possible penalties and asked Mead if he understood them, Mead spoke up and questioned the number of years for the mandatory minimum for a IB felony. The mandatory minimum was clarified and Mead then pled no contest

to each charge. The State subsequently gave the factual basis for the charges and Mead initially contested it. He then clarified that he did not agree with the factual basis but he was not contesting it.

Based on the record, Mead knew and understood what was going on at the plea hearing and asked questions when he did not understand or had questions about something that was said. The record likewise supports a conclusion that Mead understood the rights he was waiving by pleading no contest. He was also represented by counsel at the plea hearing.

In addition, Mead fails to affirmatively assert that he did not understand when the court advised him of the rights he was waiving. He simply asserts that the court did not ask him if he understood. Mead also fails to state how he was prejudiced by the court's failure to ask him if he understood his rights, and the record does not show that there was any prejudice in this case. This first assignment of error is without merit.

*Excessive Sentence.*

Mead assigns that his sentences are excessive. It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id.*

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Mead was convicted of terroristic threats, a Class IIIA felony; first degree sexual assault of a child, a Class IB felony; and unlawful intrusion, a Class IV felony. The authorized sentence of imprisonment for a Class IIIA felony is a maximum of 3 years and no minimum sentence. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). A Class IB felony carries a maximum sentence of life imprisonment and a mandatory minimum of 15 years. *Id*. A Class IV felony carries a maximum imprisonment sentence of 2 years and no minimum sentence of imprisonment. *Id*.

The court sentenced Mead to 2 to 2 years' imprisonment for the Class IIIA felony (terroristic threats), 30 to 40 years' imprisonment for the Class IB felony (first degree sexual assault of a child), and 2 to 2 years' imprisonment for the Class IV felony (unlawful intrusion). Mead's sentences are all within the statutory limits and therefore, will not be disturbed absent an abuse of discretion. See *State v. Morton, supra.*

Mead argues that the court failed to adequately consider his rehabilitative needs, his age, his health, his general life circumstances, his minimal criminal history, and his willingness to enter a no contest plea. At the time of sentencing, Mead was 40 years old with no prior felony convictions. He states that any mental health treatment and sexual offender treatment could be

completed during a much shorter period of incarceration than what the court imposed. He also contends that the court failed to give proper weight and consideration to the fact that his no contest pleas saved the State the expense of a trial, showed that he accepted responsibility for his actions, and prevented the victim from having to testify at trial.

At the sentencing hearing, the court stated it had considered the factors it was required to consider and had reviewed the presentence investigation report. It also stated that the crimes caused serious harm; Mead did not understand the severity of or the consequences of his actions and the potential harm to the victim; his actions were not provoked by the victim; and there was no reason to excuse or justify the offenses. The court further stated that it could not find that the circumstances were unlikely to recur, and could not find that Mead's character and attitude indicated that he was unlikely to commit a similar offense. The court noted Mead's evaluation indicated he was a high risk to reoffend and stated that without his ability to acknowledge that what he had done was wrong, he was an extremely high risk to reoffend.

Based on the record before us, the trial court took the appropriate factors into consideration when sentencing Mead and there is no indication it considered any inappropriate or improper factors. Accordingly, it cannot be said that the trial court abused its discretion or that the sentences imposed were excessive. This assignment of error fails.

*Ineffective Assistance of Counsel.*

Mead next assigns that his trial counsel, who was different from appellate counsel, provided ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims; an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* This procedure promotes judicial economy by allowing the appellate court that is already examining the trial record to address the merits of the ineffective assistance claim at the first opportunity and to prevent postconviction courts from having to "'search for needles in haystacks'" to determine if a viable ineffective assistance claim could have been made on direct appeal. *Id.* at 798, 969 N.W.2d at 421, citing *State v. Abdullah*, 289 Neb. 123, 130, 853 N.W.2d 858, 865 (2014).

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Blake, supra.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.* A vague or conclusory allegation of deficient performance is insufficient to raise and preserve a claim of ineffective assistance of counsel. See *State v. Abdullah, supra*.

Mead first assigns that his trial counsel was ineffective in failing to depose material witnesses prior to Mead entering his pleas. Mead alleges that he requested that his trial counsel depose the victim, in addition to other material witnesses, but no depositions ever took place. He claims that as a result the victim "was not questioned in depth about her relationship with [him]" and was not questioned "regarding [her] conversations with her mother and other third parties about the allegations made by [the victim] against [him]." Brief for appellant at 24. He claims he was deprived of mitigating information that could have been used to his benefit both in plea negotiations and at sentencing.

When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake, supra.* However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

Mead's assignment of error and supporting argument claims that his counsel failed to depose the victim and other "material witnesses" who could have provided mitigating information. Other than the victim, Mead fails to specify the names of the witnesses he wanted counsel to depose. Accordingly, the claim that trial counsel failed to depose "material witnesses" is not raised with sufficient specificity for us to resolve the allegation or to preserve it for postconviction relief. Mead sufficiently raised his claim of ineffective assistance in regard to the victim in order to preserve it, but it is apparent that we cannot determine on direct appeal what the victim would have stated in her deposition and whether it would have actually been beneficial to Mead. Therefore, we cannot resolve the allegation of ineffective assistance in regard to trial counsel's failure to depose the victim, but this claim is preserved for purposes of postconviction.

Mead next assigns that his trial counsel was ineffective in failing to file a motion to obtain a psychological evaluation prior to sentencing for mitigation purposes. He asserts that he advised his counsel well before sentencing that he suffered from mental health issues and that based on the record from the sentencing hearing, his trial counsel was "fully aware of [his] mental health issues and [his] need for counseling." Brief for appellant at 24. At the sentencing hearing, his counsel stated that Mead had consistently requested counseling in an ongoing juvenile case "to go through

feelings" and "to go through issues" but he had not received any counseling. Mead argues that a psychological evaluation would have given a full picture of his mental health that could have been used for mitigation purposes.

Mead's presentence investigation report (PSI) reflects that he underwent a mental health screen and he acknowledged that he had been depressed, attempted suicide more than once, believed people had something against him, and had been told by a teacher or guidance counselor that he had a learning disorder. The PSI also states that Mead described his mental health as "bad." He reported he never had a diagnosis of any mental health disorders and believed counseling is a "joke." A further mental health evaluation was recommended.

The PSI also shows that Mead was admitted to a psychiatric unit on May 30, 2021, due to suicidal thoughts while in jail. The hospital notes indicate he was not cooperative, seemed guarded and irritable, and not interested in getting help. He was diagnosed at that time with adjustment disorder with depressed mood. He was not interested in taking any psychotropic medication. He was discharged on May 31 and brought back to jail.

The record contains ample information regarding Mead's mental status, and at the sentencing hearing the trial court stated that it reviewed the PSI and considered Mead's mentality, among other factors. We have previously held that Neb. Rev. Stat. §§ 29-2261 and 29-2204.03 (Reissue 2016) give the district court discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed. See *State v. St. Cyr*, 26 Neb. App. 61, 916 N.W.2d 753 (2018), *disapproved on other grounds, State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). Section 29-2261(5) states, in relevant part, that before imposing sentence, the court may order the offender to submit to psychiatric observation and examination. Section 29-2204.03(1) provides, in relevant part, that when the court desires more detailed information for determining the sentence to be imposed than has been provided by the presentence report, the court shall commit an offender to the Department of Correctional Services to conduct a complete study of the offender.

We have held that neither § 29-2261 nor § 29-2204.03 provide that a defendant can or should request such further evaluations, and therefore, trial counsel cannot be deficient for failing to request evaluations that the court itself could have ordered, but in its discretion deemed unnecessary. *State v. St. Cyr, supra*. Accordingly, the record establishes that trial counsel in the present case was not ineffective for failing to file a motion to obtain a psychological evaluation prior to sentencing.

CONCLUSION

We conclude that Mead entered his no contest pleas voluntarily and intelligently. We also conclude the district court did not abuse its discretion in sentencing Mead and his sentences are not excessive. We further conclude that Mead's ineffective assistance of counsel claim in regard to failing to depose the victim was sufficiently pled and is preserved for postconviction. Mead's claim that counsel was ineffective for failing to depose unnamed material witnesses was not sufficiently pled and not preserved for a postconviction proceeding, and his claim that counsel was ineffective for failing to file a motion to obtain a psychological evaluation fails. Accordingly, Mead's convictions and sentences are affirmed.

AFFIRMED.