IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. NICHOLAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ARIC A. NICHOLAS, APPELLANT.

Filed March 15, 2022.    Nos. A-21-013, A-21-015, A-21-714.

Appeals from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Aric A. Nicholas appeals from his plea-based convictions in three separate cases in the district court for Lancaster County. The three cases were consolidated on appeal. Nicholas asserts that the sentences imposed are excessive. He also asserts that his trial counsel was ineffective in three respects. For the reasons that follow, we affirm Nicholas' convictions and sentences.

## II. BACKGROUND

### 1. CASE NO. A-21-714

On November 27, 2019, an information was filed, charging Nicholas with one count of first degree sexual assault, a Class II felony, and with one count of attempted first degree sexual

assault, a Class IIA felony. According to the factual basis provided by the State, the charges stemmed from Nicholas' relationship with H.B. during the summer of 2019.

H.B. reported to law enforcement that she began communicating with a man named Darelle Taylor over social media in May or June 2019. It was later revealed that Darelle Taylor was Nicholas. After 1 or 2 weeks of communicating with Nicholas, H.B. agreed to meet him in person. They met at the 8N Lofts in Lincoln, Nebraska, where they spent time at the pool on the top floor of the building. H.B. said that Nicholas gave her a cocktail which contained an unknown amount of alcohol. As a result of consuming the cocktail, H.B. became intoxicated. H.B. did not remember the specifics of the rest of the evening, but she did recall that she had sexual intercourse with Nicholas in one of the bathrooms of the pool area. H.B. believed that she also drove Nicholas to a fast-food restaurant at some point during the night.

After that night, H.B. informed Nicholas that she did not want a sexual relationship with him. Instead, she thought that they should just be friends. After this conversation, Nicholas forwarded her three videos from their encounter. The first video showed the two of them having sexual intercourse in the pool bathroom. The second video was of the two of them having sexual intercourse in her car, and the third video was of Nicholas digitally penetrating her while they were in the drive through of the fast-food restaurant. H.B. did not realize that Nicholas had videotaped any portion of their encounter. Nicholas threatened to send the videos to H.B.'s husband and co-workers and to post them on social media if she did not do what he asked. H.B. reported that upon his request, she met with Nicholas four or five more times. Each meeting involved her having sexual intercourse with Nicholas so that he would not release the videos. H.B. provided law enforcement with text messages between herself and Nicholas, which corroborated her story. In one such message, Nicholas told H.B. she must have sexual intercourse with him three times in the next week in order to avoid having him expose the videos.

We note that Nicholas' appeal in case No. A-21-714 was granted after he filed a motion for postconviction relief claiming that his trial counsel had failed to perfect a timely direct appeal from his convictions and sentences.

## 2. CASE NO. A-21-013

On November 27, 2019, an information was filed charging Nicholas with assault by a confined person, a Class IIIA felony. According to the factual basis provided by the State, the charge stems from a fight which occurred between Nicholas and another inmate while he was housed at the Lancaster County jail awaiting trial in case No. A-21-714.

On September 24, 2019, Nicholas entered the basketball court in the L-Pod yard area. Upon his entrance, another inmate was seated on the ground on the basketball court sharpening the handle side of a plastic fork. Nicholas approached the other inmate and began hitting him with a closed fist while the other inmate remained seated on the ground. The other inmate stood up and a mutual fight ensued. The other inmate did make a stabbing motion toward Nicholas and continued to strike him even after Nicholas was restrained by correctional officers.

## 3. CASE NO. A-21-015

On May 7, 2020, an information was filed charging Nicholas with assault by a confined person, a Class IIIA felony. According to the factual basis provided by the State, the charge stems

from another fight which occurred between Nicholas and another inmate while he was housed at the Lancaster County jail awaiting trial in case No. A-21-714.

On January 26, 2020, Nicholas and another inmate were engaging in a "one-on-one" basketball game. During the game, Nicholas became upset, pushed the other inmate, and then twice struck the inmate in the face with a closed fist. The other inmate retaliated and hit Nicholas after which Nicholas struck the other inmate one more time. Correctional officers believed that Nicholas was the "predominant aggressor." The other inmate had blood on his shirt, a swollen lip, and a fresh cut.

### 4. PLEA HEARING

A combined plea hearing was held on June 25, 2020, in all three cases. In case No. A-21-714, Nicholas pled no contest to two counts of attempted first degree sexual assault, each a Class IIA felony. In both cases Nos. A-21-013 and A-21-015, Nicholas pled no contest to a charge of third degree assault, a Class I misdemeanor. In addition, as part of the plea agreement, the State agreed not to file charges associated with certain Lincoln Police Department investigations.

The court then found beyond a reasonable doubt that Nicholas understood the nature of the charges and possible sentences; that his pleas were made freely, knowingly, intelligently, and voluntarily; and that the factual bases were sufficient to support Nicholas' pleas. The court accepted Nicholas' pleas of no contest to all charges and ordered a presentence report (PSR) be prepared. In addition, over Nicholas' objection, the court ordered Nicholas to engage in a psychosexual evaluation.

### 5. SENTENCING HEARING

A combined sentencing hearing for all three cases was held on December 8, 2020. At the hearing, defense counsel asked the district court to sentence Nicholas to a period of imprisonment that was less than the maximum permitted by statute. Counsel also asked the court to, at least, order that the sentences for Nicholas' two convictions for attempted first degree sexual assault run concurrent to each other, rather than consecutive to each other. To the contrary, the State argued for a significant sentence of imprisonment: "And the State just asks that the Court use as many years as are necessary, given the facts, the criminal history, his continued risk to the community, and the irreparable harm that he has caused."

Ultimately, in case No. A-21-714, the court imposed a sentence of 16 to 20 years' imprisonment for each of Nicholas' convictions for attempted first degree sexual assault. These sentences were ordered to run consecutively with each other and with the sentences in cases Nos. A-21-013 and A-21-015. In case No. A-21-013, the district court imposed a sentence of 6 months' imprisonment for his conviction for third degree assault. In case No. A-21-015, the court imposed a sentence of 12 months' imprisonment for his conviction for third degree assault. The sentences for the two third degree assault convictions were ordered to run consecutively to each other.

Between all three cases, Nicholas' total combined sentence was 33½ years to 41½ years' imprisonment. Nicholas now appeals.

## III. ASSIGNMENTS OF ERROR

Nicholas assigns that the district court imposed excessive sentences and that his trial counsel was ineffective. Specifically, Nicholas contends that trial counsel failed to request a sentence of either probation or time in county jail; failed to file a motion to provide collateral information to the evaluator who performed a psychosexual evaluation on Nicholas; and failed to obtain and offer as evidence all of the police reports surrounding Nicholas' previous conviction in Denver, Colorado.

## IV. STANDARD OF REVIEW

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Nicholas assigns that the district court imposed an excessive sentence when considering the "combined sentence of not less than 33 and ½ years nor more than 41 and ½ years imprisonment for the present offenses in this case." Brief for appellant at 15. The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

Nicholas was convicted of two counts of attempted first degree sexual assault, each a Class IIA felony. Class IIA felonies are punishable by up to 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). The district court sentenced Nicholas to 16 to 20 years' imprisonment for each of his convictions for attempted first degree sexual assault. Such sentences are within the statutory limits. Nicholas was also convicted of two counts of third degree assault, each a Class I misdemeanor. A Class I misdemeanor is punishable by up to 1 year's imprisonment and/or a $1,000 fine. Neb. Rev. Stat. § 28-106 (Reissue 2016). The district court sentenced Nicholas to 6 months' imprisonment on one of his convictions for third degree assault and to 12 months' imprisonment on the other conviction. These sentences are also within the statutory limits.

Because each of the sentences is within statutory limits, we review the district court's sentences for an abuse of discretion. In reviewing whether an abuse of discretion occurred during

sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

We begin by observing that at the sentencing hearing, the district court indicated that it had reviewed the PSR, the results of Nicholas' psychosexual evaluation, and additions to those reports offered by both Nicholas and the State. At the time of the preparation of the PSR, Nicholas was 31 years old, single, with no dependents. He had a high school diploma, but did not have a stable employment history. He told the probation officer who conducted the PSR that he had "primarily made his income throughout his adult life as a semi-professional football player, rugby player, and social media influencer."

Nicholas described a difficult upbringing, including being removed from his mother's care due to physical abuse and neglect and being placed in multiple foster homes. He also described abuse suffered in these foster homes, in group homes, and in a correctional facility for juveniles. Defense counsel provided a lengthy and detailed recounting of Nicholas' upbringing as an attachment to the PSR.

Nicholas has an extensive criminal history. Such history began when Nicholas was only 9 years old. As a juvenile, Nicholas was adjudicated for the following offenses: theft, assault, battery (two times), carrying a concealed weapon, and escape from a secure facility. As a result of his adjudication for escape, he was committed to a high risk juvenile facility until he turned 19 years old.

As an adult, Nicholas has previously been convicted of battery in a jail or detention facility (two times), assault, identity theft, trespassing, obstructing a police officer (two times), domestic assault, criminal destruction of a communication device (two times), contributing to the delinquency of a minor, and possession of marijuana. He has also been convicted of numerous traffic offenses. Nicholas has been accused, but not convicted of, rape and sexual assault on more than one prior occasion.

At the time of Nicholas' involvement with the victim in this case, H.B., he was still on probation for his conviction for contributing to the delinquency of a minor, which occurred in Colorado. In addition, after Nicholas was arrested on the current charges, multiple other women came forward to law enforcement to report that Nicholas had extorted money and/or sexual acts from them. At least six of these women described circumstances similar to that described by H.B. Nicholas invited them to a pool, where he supplied them with a cocktail that he made. The women became drunk and unknowingly had sexual encounters with Nicholas. After the fact, Nicholas threatened to release videos of the sexual encounters if the women did not do as he demanded. Statements from H.B. and others also demonstrated that Nicholas physically abused many of his victims. Nicholas had two active protection orders against him at the time of the presentence interview.

The results of Nicholas' psychosexual evaluation revealed diagnoses of unspecified paraphilic disorder and antisocial personality disorder. The evaluator explained:

> Mr. Nicholas appears to have minimal insight into his sexually inappropriate behaviors and risk for re-offense. Based on the actuarial risk assessments, he scores in the Well Above Average category for risk and needs. At this time, Mr. Nicholas appears to be in the Precontemplation Stage of Change. While he recognizes he has some difficulties, it appears his definition of his problems is greatly minimized.

It was recommended that Nicholas participate in sex offender treatment.

Testing conducted by the probation office also indicated that Nicholas poses a very high risk of re-offense. In fact, his score on the LS/CMI was one point away from the maximum score possible.

In his brief on appeal, Nicholas contends that when imposing his sentence, the district court failed to consider the mitigating factors present in this case, including his rehabilitative needs and "his age, his health, his general life circumstances, his role in the present case, and his willingness to enter a no contest plea." Brief for appellant at 15. The record refutes Nicholas' claim that the district court failed to consider any mitigating circumstances.

The PSR included a great deal of information about Nicholas' life circumstances, including his difficult upbringing. In addition, Nicholas' counsel reiterated such information in detail during the sentencing hearing. Ultimately, the district court explained its consideration of such mitigating factors as follows:

> Well, Mr. Nicholas, I do understand that you had a lot of difficulties in your early life, and clearly you have natural talents and abilities. I wish that your life had taken a different turn, but it didn't. You amassed a criminal history in five states, Florida, Washington, Montana, Colorado and now Nebraska, that all included some form of assault and battery, sometimes multiple assaults. And, in three of those states, you were at least accused of sexual assault or rape, that being Washington, Colorado and Nebraska. That is a pattern of conduct that the Court cannot ignore.
>
> And if I were to craft a sentence which was solely for your benefit for your rehabilitation, it would be quite different, but I have a competing duty to the victims in the case and to society in general, to protect them from these kinds of acts of violence.

Such comments by the court clearly indicate that the district court considered the mitigating factors presented by the defense, but that it balanced those factors with Nicholas' significant criminal history and the severity of the current offenses.

Upon our review, we find no abuse of discretion in the district court's sentencing determination. Nicholas has demonstrated a pattern of exploiting and assaulting women. He benefited greatly from the plea agreement made available to him by the State, especially when considering that such agreement indicated he would not be charged with committing similar crimes against other women. We affirm the decision of the district court to sentence Nicholas to a total of 33½ years to 41½ years' imprisonment.

## 2. Ineffective Assistance of Trial Counsel

Nicholas next assigns, through new counsel, that his trial counsel was ineffective in three respects. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Otherwise the issue will be procedurally barred. *Id*. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, except for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id*.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *Id*.

In general, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Lowman, supra*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha, supra*. When the claim is raised in a direct appeal the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). However, an ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes either that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015); *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

The entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable, and trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. An appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel. *State v. Lowman, supra*.

### (a) Failure to Argue in Favor of Sentence of Probation or Period in County Jail

At the sentencing hearing, Nicholas' counsel informed the district court that Nicholas was not asking for a sentence of probation or a sentence which could be served in the county jail. Counsel acknowledged that Nicholas' convictions were too serious for such sentences:

I'm not asking that you consider probation with this case. That would be a ridiculous ask. I'm not asking for jail. That would also be a ridiculous ask. This case deserves some prison

time. He crossed a bright red line and it deserves prison time. And only the prison system has the sex offender rehabilitation programs that can start to help [Nicholas] really address his power and control dynamic and to address that institutional trauma that he suffered, as well as the trauma that he suffered from his mom.

As we discussed above, counsel did ask the district court to sentence Nicholas to "a term less than the maximum" and requested that the sentences in case No. A-21-714 run concurrent with each other.

On appeal, Nicholas asserts that his trial counsel provided ineffective assistance by failing to request a sentence of probation or a term in county jail. Upon our review of the record, we conclude that Nicholas cannot demonstrate he was prejudiced by trial counsel's failure to request a sentence of probation or a term in county jail.

Despite trial counsel's indication that he was not asking for a sentence of probation or a short period in jail, it does appear that the district court considered such a sentence. The court explained:

> [H]aving regard for the nature and circumstances of the crimes and the history, character and condition of [Nicholas], the Court does find that imprisonment of [Nicholas] is necessary due to the serious nature of the crimes and to protect the safety and security of the public, because the risk is substantial that if placed on probation, [Nicholas] would engage in additional criminal conduct. [Nicholas'] crimes have involved violence to his victims, and a lesser sentence would depreciate the seriousness of the crimes and promote disrespect for the law.

The statements of the district court clearly indicate that it considered a sentence of probation or a lesser sentence of imprisonment, but determined that based upon the violent nature of the crimes and the danger that Nicholas posed to the public, lesser sentences were not warranted. Had Nicholas' trial counsel advocated in favor of such lesser sentences, he would not have been successful given the district court's findings. Thus, Nicholas cannot demonstrate that counsel's failure to ask for a sentence of probation or a term in county jail affected the sentencing determination of the district court.

### (b) Failure to Make Motion to Provide Collateral Information to Evaluator for Psychosexual Evaluation

During the sentencing hearing, Nicholas' counsel offered evidence to demonstrate that he had attempted to provide collateral information to the evaluator who had conducted Nicholas' psychosexual evaluation. Counsel informed the district court that the evaluator did not review the collateral information available to her from his office. In the report, however, the evaluator does reference receiving collateral information from the State. Counsel then argued that the results of the psychosexual evaluation were not valid because the evaluator did not have all of the information regarding Nicholas' history nor of the circumstances surrounding some of his prior convictions. Counsel also offered as an addendum to the PSR, a lengthy report of Nicholas' history and mental health diagnoses authored by a social worker who works in counsel's office.

On appeal, Nicholas asserts that his trial counsel was ineffective for failing to file a motion with the district court to allow him to provide collateral information to the evaluator. Upon our review, we conclude that trial counsel was not ineffective in this regard. Nicholas cites us to no authority which allows a court to require an expert evaluator performing a psychosexual evaluation to consider specific collateral evidence in reaching their conclusion. Nicholas appears to be arguing that the court, as opposed to the psychological expert, can determine what evidence is relevant for the expert's evaluation. The purpose of a psychosexual evaluation is to provide the court with an independent opinion regarding Nicholas' current mental health diagnoses as they related to his sexual offenses. To require the evaluator to accept and consider specific collateral information would damage the evaluator's independence. Here, the report authored as a result of Nicholas' psychosexual evaluation includes a lengthy history of Nicholas' personal circumstances including his family history, education, work, legal history, along with information regarding past substance use and involvement with mental health treatment. The report also includes his version of the events surrounding his prior convictions. It is not clear what other insight the evaluator may have gained from the collateral information or how such information would have changed the results of the report, which appeared to be largely based upon the evaluator's interaction with Nicholas combined with standardized testing that was administered. In any event, any motion that may have been filed would have failed, as it is the evaluator, and not the court, who should decide what collateral information is relevant to the evaluation the expert was hired to perform.

Where, as here, defense counsel believes that the evaluation is flawed due to the failure of the evaluator to consider proffered collateral information, counsel is free to point out any deficiencies they believe exist. In this case, trial counsel not only pointed out the claimed deficiencies, but provided an alternative report authored by a social worker from their office. We find that trial counsel did not perform deficiently by failing to file a motion seeking an order that would require the expert to review the proffered collateral information.

### (c) Failure to Obtain and Offer Into Evidence Police Reports From Nicholas' Conviction in Denver, Colorado

As we discussed above, Nicholas was previously convicted of contributing to the delinquency of a minor in Colorado. He was still on probation for this conviction at the time of his involvement with H.B. The record in that case demonstrates that he was also charged with sexual assault at the inception of that case, but those charges were dismissed. The victim in that case provided a victim impact statement as part of the current PSR. In that statement, the victim indicates that Nicholas raped her and that his actions were minimized by prosecutors such that he was able to victimize other women. She detailed her mental health struggles as a result of Nicholas' actions. Contrary to the victim's account, during the presentence interview, Nicholas explained that he had consensual sex with the victim and that she only accused him of drugging and raping her after he refused to give her a ride home. He indicated that the victim changed her story several times and that is why he was permitted to plead to contributing to the delinquency of a minor, rather than going to trial on the sexual assault charges. During the sentencing hearing, counsel for Nicholas corroborated Nicholas' account of the Colorado conviction, telling the court that the victim was under the influence of drugs at the time of her encounter with Nicholas and that she had previously falsely accused other men of sexual assault.

On appeal, Nicholas alleges that trial counsel was ineffective because counsel did not obtain a complete set of police reports for the Colorado incident to produce at the sentencing hearing. Nicholas alleges that the police reports "would have assisted in mitigating [his] sentence and providing information to assist in the argument" that he should receive a lesser sentence for the current convictions. Brief for appellant at 18-19. Notably, Nicholas does not allege exactly what information was contained in the police reports or how such information would have persuaded the district court to impose a lesser sentence. During the sentencing hearing, counsel did inform the court that he had received a great deal of information "from the Denver case." Counsel admitted that he did not have the police reports, but that he had contacted Nicholas' criminal defense attorney in that case to obtain additional information.

Ultimately, we conclude that counsel's failure to secure the Colorado police reports did not constitute ineffective assistance. Nicholas and his counsel provided the district court with his version of events, which clearly contradicted the victim's version of events. Counsel also provided the district court with information he had received about the case from Nicholas' counsel in Colorado. The district court was also made aware that Nicholas was not convicted of sexual assault in Colorado, but instead pled to contributing to the delinquency of a minor. Regardless of what the police reports indicated, the district court knew, at the time of imposing sentence, of the disputed facts surrounding the Colorado case. However, the district court was also aware of the other allegations of sexual assault and extortion made against Nicholas by a total of 10 women dating back to 2009. There is nothing to indicate that had the district court reviewed the Colorado police reports, that such information would have altered Nicholas' sentence in any way.

## VI. CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in sentencing Nicholas to a combined 33½ years to 41½ years' imprisonment in these consolidated cases. We find Nicholas' claims of ineffective assistance of trial counsel to be without merit. Accordingly, we affirm Nicholas' convictions and sentences.

AFFIRMED.