IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. DICINI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHELLE M. DICINI, APPELLANT.

Filed January 17, 2023.    No. A-22-446.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed as modified.

Joe Nigro, Lancaster County Public Defender, and Chelsie E. Krell for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Michelle M. Dicini appeals from her plea-based convictions for two counts of unlawful acts in Department of Corrections (DCS) or conveyance of an article to an inmate and attempting to deliver, manufacture, or with intent to deliver a controlled substance. Dicini argues that the district court imposed excessive sentences and that she received ineffective assistance of trial counsel. For the reasons set forth herein, we affirm as modified.

## STATEMENT OF FACTS

In November 2021, the State filed an information charging Dicini with unlawful acts in DCS or conveyance of an article to an inmate, a Class IV felony, and first degree sexual abuse of an inmate or parolee, a Class IIA felony. Pursuant to a plea agreement, Dicini pled no contest to an amended information charging her with: count I, unlawful acts in DCS or conveyance of an

article to an inmate, E.C., a Class IV felony; count II, unlawful acts in DCS or conveyance of an article to an inmate, M.C., a Class IV felony; and count III, attempting to deliver, manufacture, or with intent to deliver controlled substance (a schedule 1, 2, or 3 drug), a Class IIIA felony. See, Neb. Rev. Stat. § 83-417 (Reissue 2014) (allow committed offender to escape or have unauthorized visitation or communication; penalty); Neb. Rev. Stat. § 28-201 (Reissue 2016) (criminal attempt); Neb. Rev. Stat. § 28-416 (Cum. Supp. 2020) (drugs and narcotics; prohibited acts; violations; penalties).

The State provided a factual basis for the charged offenses. Regarding count I, the State alleged that an investigation began in May 2021 regarding allegations that Dicini, a DCS corporal, was involved in a romantic relationship with inmate E.C. DCS located emails sent to E.C. on E.C.'s JPay account, which is a system that inmates use to send and receive emails. There were also emails sent from E.C. to a fictitious name that appeared to be related to Dicini. After waiving her *Miranda* rights, Dicini admitted that she created a fake account to email inmate E.C. in violation of DCS without permission. Some of Dicini and E.C.'s communications were intimate in nature and Dicini admitted to kissing E.C. on three occasions in a closet within the DCS system.

Regarding count II, the State alleged that information obtained from other JPay accounts and from other inmates indicated that Dicini may also have been involved in a relationship with inmate M.C. During an interview, M.C. admitted to having intercourse with Dicini. Dicini admitted having a sexual relationship with inmate M.C. in a religious center within the Lincoln Correctional Center and to sending and receiving text messages with M.C. She also admitted to bringing a cellular telephone into DCS for inmate M.C. and that she would communicate with him on that cellular telephone.

Regarding count III, Dicini admitted to bringing packages containing marijuana into the DCS system on two occasions.

At the sentencing hearing, the district court stated:

[t]hese are simply too serious of crimes to even consider placing you on probation. Because to do so would so depreciate the seriousness of these crimes and would absolutely promote disrespect for the law.

Having considered all of the statutory factors that I must consider, I do find that imprisonment is necessary. Lesser sentences than I will impose here today would absolutely . . . depreciate the seriousness of these crimes and promote disrespect for the law.

The district court sentenced Dicini to 2 years' imprisonment on count I; 2 years' imprisonment on count II, to run consecutively to count I; and 3 years' imprisonment on count III. Dicini was given credit for 21 days already served. In its subsequent written sentencing order, the court ordered that count III was ordered to be served consecutively to counts I and II, followed by 9 months of post-release supervision. Dicini now appeals from her convictions and sentences.

ASSIGNMENTS OF ERROR

Dicini contends that (1) the sentences imposed were excessive and (2) trial counsel was ineffective by failing to advise her regarding the possibility of filing a motion to suppress evidence under Neb. Rev. Stat. § 20-151 (Cum. Supp. 2020) on the grounds that she is hard of hearing.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). Further, it is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

### EXCESSIVE SENTENCE

Dicini's first assignment of error is that the sentences imposed were excessive. She argues that the district court abused its discretion in failing to properly weigh the appropriate factors in determining her sentence and, if it had done so, the court would have sentenced her to probation.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Morton,* 310 Neb. 355, 966 N.W.2d 57 (2021). The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Here, Dicini's sentences of 2 years' imprisonment each on counts I and II, both Class IV felonies, were within the statutory sentencing range for Class IV felonies, which are punishable by no minimum and a maximum of 2 years' imprisonment and 12 months of post-release supervision and/or a $10,000 fine. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Further, the district court found that Dicini was not a suitable candidate for probation due to the serious nature of the offenses and because to do so would depreciate the seriousness of these crimes and would promote disrespect for the law. See Neb. Rev. Stat. § 29-2204.02 (Reissue 2016) (Sentence for Class III, IIIA, or IV felony). Although the district court did not specifically set forth the weight it placed on each of the statutory factors, the court stated that it had considered all of the statutory factors and determined that a sentence of imprisonment was necessary. Section 29-2260 does not require the

trial court to articulate on the record that it has considered each sentencing factor, and it does not require the court to make specific findings as to the factors and the weight given them, and the absence of specific findings concerning the factors set forth in § 29-2260 cannot in itself be error or grounds for reversal. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020).

On count III, a Class IIIA felony, Dicini was sentenced to 3 years' imprisonment followed by 9 months of post-release supervision, which is within the statutory sentencing range for Class IIIA felonies, which are punishable by a minimum of no imprisonment and a maximum of 3 years' imprisonment followed by 9 to 18 months of post-release supervision and/or a $10,000 fine. § 28-105. Accordingly, Dicini's sentence is within the statutory sentencing range.

At the time of the presentence investigation report, Dicini was 39 years old, married, with two dependents. Dicini had obtained a high school diploma and had some college education. She had no prior criminal history and the level of service/case management inventory assessed her in the low-risk range to reoffend. However, we note that Dicini received a benefit from her plea agreement in which a Class IIA felony was dismissed.

Based upon factors including that the sentence imposed was within the statutory sentencing range, that the district court properly considered the appropriate sentencing factors, and the need for sentences that will not depreciate the seriousness of these crimes and promote disrespect for the law, the sentences imposed were not an abuse of discretion.

We note, in the oral pronouncement of the sentence, the district court did not indicate that count III was to run consecutively to counts I and II. However, the court's subsequent written order provided that the sentence on count III was ordered to run consecutively to counts I and II. Dicini did not separately assign this as error. Nevertheless, an appellate court may, at its option, notice plain error. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *Id.*

Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015). In Nebraska, unless prohibited by statute or unless the sentencing court states otherwise when it pronounces the sentences, multiple sentences imposed at the same time run concurrently with each other. *Id.* Additionally, when a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

Because the district court did not indicate in its oral pronouncement that the sentence on count III was to run consecutively to the sentences imposed on counts I and II, we find that the district court committed plain error in its written order. Therefore, we modify count III of the sentence in that count III is to run concurrently to counts I and II.

### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Dicini next argues that her trial counsel was ineffective for failing to advise her regarding a motion to suppress her statements obtained during her interrogation on the grounds that she is hard of hearing.

In *State v. Lowman*, 308 Neb. 482, 496-97, 954 N.W.2d 905, 919 (2021), the Nebraska Supreme Court stated:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

Further, as stated by the Nebraska Supreme Court in *State v. Blaha*, 303 Neb. 415, 422-23, 929 N.W.2d 494, 502 (2019):

> Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order.

When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.*

Here, Dicini argues that counsel was deficient for failing to advise her regarding the possibility of filing a motion to suppress her statements made during the investigation on the grounds that she is hard of hearing. A "deaf or hard of hearing person" is defined in Neb. Rev. Stat. § 20-151(3) (Cum. Supp. 2020) as

> a person whose hearing impairment, with or without amplification, is so severe that he or she may have difficulty in auditorily processing spoken language without the use of an interpreter or a person with a fluctuating or permanent hearing loss which may adversely affect the ability to understand spoken language without the use of an interpreter or other auxiliary aid[.]

Pursuant to Neb. Rev. Stat. § 20-152 (Reissue 2012):

Whenever a deaf or hard of hearing person is arrested and taken into custody for an alleged violation of state law or local ordinance, the appointing authority shall procure a licensed interpreter for any interrogation, warning, notification of rights, or taking of a statement, unless otherwise waived. No arrested deaf or hard of hearing person otherwise eligible for release shall be held in custody solely to await the arrival of a licensed interpreter. A licensed interpreter shall be provided as soon as possible. No written or oral answer, statement, or admission made by a deaf or hard of hearing person in reply to a question of any law enforcement officer or any other person having a prosecutorial function may be used against the deaf or hard of hearing person in any criminal proceeding unless (1) the statement was made or elicited through a licensed interpreter and was made knowingly, voluntarily, and intelligently or (2) the deaf or hard of hearing person waives his or her right to an interpreter and the waiver and statement were made knowingly, voluntarily, and intelligently. The right of a deaf or hard of hearing person to an interpreter may be waived only in writing. The failure to provide a licensed interpreter pursuant to this section shall not be a defense to prosecution for the violation for which the deaf or hard of hearing person was arrested.

We note that the record reflects that Dicini did not request an interpreter during her plea hearing or sentencing hearing, did not inform the court that she was unable to hear the proceedings, and answered questions appropriately. Further, the following colloquy took place between the court and Dicini during the plea hearing:

THE COURT: Are you satisfied with the job [trial counsel] has done for you?

THE DEFENDANT: Yes.

THE COURT: Do you believe he is a competent lawyer and knows what he's doing?

THE DEFENDANT: Yes.

THE COURT: Has he refused or neglected to do anything that you have asked of him?

THE DEFENDANT: No.

THE COURT: Have you had enough time to talk with him about this case?

THE DEFENDANT: Yes.

THE COURT: Before we go any further, do you need any more time to talk with him about anything?

THE DEFENDANT: No.

Additionally, during the plea hearing the district court instructed Dicini regarding her ability to seek a separate hearing to determine admissibility of statements or other evidence and understood she would be waiving that right as a result of her plea:

THE COURT: If you have made any statements, admissions or confessions to law enforcement or any other public official about this case, you are entitled to a separate hearing to have me determine whether such statement, admission or confession was made by you freely, voluntarily, knowingly and intelligently. If at that hearing I found that any

one or more of those items was missing, then that statement, admission or confession could not be used against you at the time of a trial. Do you understand that?

> THE DEFENDANT: Yes.
>
> THE COURT: But if I accept your pleas of no contest, you'll be waiving and giving up your right to have this type of hearing; do you understand that?
>
> THE DEFENDANT: Yes.

In this case, based on our review of the record, we find that Dicini's allegation of ineffective assistance of trial counsel for failing to advise her regarding a motion to suppress her statements obtained during her interrogation on the grounds that she is hard of hearing is refuted by the record. Dicini was made aware of her right to a separate hearing on the admissibility of any statements or confessions made to law enforcement, and she agreed that she would be waiving that right by taking the plea. Additionally, when asked whether she felt her counsel failed to address anything that she requested of him, Dicini said no. When considered together with the fact that Dicini never indicated during any stage of the proceeding that she suffered from a hearing impairment as defined in § 20-151(3) and she clearly responded to the district court's questions without any indication whatsoever of a lack of ability to understand or hear the spoken language without an interpreter or auxiliary aid, we find the record affirmatively refutes Dicini's claim and that she was not prejudiced by her counsel's alleged defective performance. As a result, this assignment of error fails.

## CONCLUSION

Having considered and rejected Dicini's assigned errors, we affirm Dicini's convictions and sentences; however, we modify Dicini's sentence on count III to provide that the sentence on count III is to be served concurrently with counts I and II.

AFFIRMED AS MODIFIED.