Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/21/2021 08:10 AM CDT

STATE OF NEBRASKA, APPELLEE, V. THEARDISE
K. LOWMAN, JR., APPELLANT.
___ N.W.2d ___

Filed February 26, 2021.    No. S-20-240.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.

4. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

5. **Pretrial Procedure: Trial: Evidence: Appeal and Error.** Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review.

6. **Trial: Evidence: Motions to Suppress: Waiver: Appeal and Error.** The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal.

7. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial.

8. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection.

9. **Constitutional Law: Criminal Law: Police Officers and Sheriffs: Investigative Stops: Search and Seizure: Appeal and Error.** The second tier of police-citizen encounters, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a seizure sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.

10. **Constitutional Law: Criminal Law: Police Officers and Sheriffs: Arrests: Search and Seizure: Probable Cause.** The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention. The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.

11. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

12. **Police Officers and Sheriffs: Search and Seizure.** A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.

13. **Police Officers and Sheriffs: Investigative Stops: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis.

14. **Police Officers and Sheriffs: Probable Cause.** In determining whether a police officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience.

15. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions.

16. **Warrantless Searches.** The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

17. **Warrantless Searches: Motor Vehicles.** Nebraska has recognized that among the established exceptions to the warrant requirement is the automobile exception.

18. **Weapons: Motor Vehicles: Words and Phrases.** A weapon is concealed on or about the person if it is concealed in such proximity to the driver of an automobile as to be convenient of access and within immediate physical reach.

19. **Effectiveness of Counsel: Proof: Words and Phrases.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

20. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

21. **Effectiveness of Counsel: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal.

22. ____: ____. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.

23. **Effectiveness of Counsel: Presumptions.** The entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable.

24. **Trial: Effectiveness of Counsel: Appeal and Error.** Trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

Theardise K. Lowman, Jr., appeals from convictions, pursuant to a jury verdict, for possession of a controlled substance and two counts of carrying a concealed weapon. He argues that the district court erred in overruling his motion to suppress evidence, that the evidence regarding a machete in his vehicle was insufficient to convict him of carrying a concealed weapon, and that he received ineffective assistance of counsel. Finding no merit to any of his claims, we affirm the district court's judgment.

## BACKGROUND

### FACTS

On April 8, 2019, at approximately 5:04 a.m., Officer James Murray was on duty and patrolling in the area of a carwash. The carwash was open at the time, but signs posted on the building prohibit loitering. Murray observed a vehicle backed into one of the wash bays. He believed a person was sitting in the driver's seat, and he did not see anybody outside of the

vehicle. Murray parked his cruiser and watched to see if the occupant would wash the vehicle or leave.

After 5 minutes of not seeing or hearing activity, Murray approached the vehicle. He noticed that the vehicle and the concrete floor were dry. As Murray approached the passenger's side of the vehicle, Lowman started to leave the vehicle. Murray asked if Lowman would move to the front of the vehicle and speak with Murray, and Lowman agreed to do so. Murray looked quickly inside the vehicle before speaking with Lowman. Murray observed a car stereo on the front passenger's seat with numerous wires protruding from the back. He also observed what appeared to be a metal pipe—which could be used for smoking controlled substances—sticking between the center console and the driver's seat. Murray noticed that Lowman was holding a torch-style lighter.

Lowman told Murray that he had been visiting a friend in the area and chose the carwash to "do some thinking and sort through some things." Lowman stated that he had been at the carwash for 1 to 2 hours. Murray noticed that Lowman was "fidgety with his hands," moving around a bit on his feet, speaking with a rapid speech pattern, and speaking at great length when answering simple questions. Murray suspected that Lowman had engaged in drug use at the carwash. Murray asked whether Lowman had any weapons, and Lowman answered that he did not have a weapon on his person but volunteered that he had a machete inside the vehicle, "tucked down by the center console." Murray asked dispatch to send another officer.

After backup arrived, Murray informed Lowman that he was being detained and that Lowman and his vehicle were going to be searched. Murray located a black zippered bag attached to Lowman's waistband which contained a digital scale, a weight used for "zeroing out" the scale, unused jewelers' bags that are commonly used for storing controlled substances, and two jewelers' bags that contained an off-white crystalline substance which appeared to be methamphetamine. A search

of Lowman's vehicle uncovered a machete, a pair of brass knuckles in the center console, and a black eyeglass case that contained a broken glass methamphetamine pipe. An officer testified that he could see the machete's handle "sticking out from in between the passenger's seat."

The State charged Lowman with possession of methamphetamine, carrying a concealed weapon (two counts), and possession of drug paraphernalia.

## Motion to Suppress

In September 2019, Lowman filed a motion to suppress all evidence obtained by the police as a result of the detention, arrest, questioning, and search of Lowman along with the search of his vehicle. Lowman alleged that there was no reasonable suspicion or probable cause to search him or his vehicle and that he was questioned in violation of his *Miranda* rights. The motion was set to be heard on September 27, but Lowman did not appear for the hearing. Lowman's counsel withdrew the motion. In October, Lowman filed another motion to suppress, which contained the same allegations as the earlier motion. It was heard the day before trial was set to begin.

The court overruled the motion to suppress. It found that Murray had reasonable suspicion to conduct the initial stop of Lowman. The court found that Lowman was not using the carwash for its intended purpose, that signs were posted prohibiting loitering, and that criminal activity had occurred there previously. It further found that Lowman voluntarily agreed to speak with Murray and that Lowman admitted to smoking marijuana in the past and to having a machete concealed in his vehicle. The court stated that Murray's observation of the torch-style lighter and an object appearing to be something in which suspects can hide controlled substances, along with Lowman's behavior, nonsensical answers, and change in demeanor when asked if he had smoked methamphetamine, contributed to Murray's determination of probable cause for arrest. Although Lowman was not advised of his *Miranda*

rights, the court noted that no questioning occurred after arrest. The court agreed that Murray had probable cause to arrest Lowman; accordingly, it found no Fourth Amendment violation when Murray searched Lowman pursuant to that arrest.

## Trial

The court conducted a jury trial. Prior to the introduction of evidence, Lowman's counsel stated, "I do want to renew my motion to suppress the detention, arrest, questioning, and search of my client as well as the search of my client's vehicle . . . and essentially just renew the motion to suppress that I refiled with the Court that was just ruled on yesterday." The court stated: "Okay, so that motion will be overruled, but I assume that you're renewing your motion for purposes of appeal . . . should it get there. So, that issue will be preserved." On many—but not all—occasions, Lowman objected based on the motion to suppress when the State offered exhibits into evidence.

The jury returned a verdict of guilty as to possession of a controlled substance and as to both counts of carrying a concealed weapon, but not guilty as to the drug paraphernalia charge. The court subsequently placed Lowman on probation for 2 years.

Lowman promptly appealed, and we moved this case to our docket.[1]

## ASSIGNMENTS OF ERROR

Lowman assigns two errors related to the evidence. He alleges that the court erred in overruling his motion to suppress evidence and that the evidence was insufficient to support the verdict.

Lowman also assigns that his trial counsel provided ineffective assistance. One assignment alleges, "The defendant received ineffective assistance of counsel when defendant's counsel filed a last minute motion to suppress and was

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

ill-prepared and was unable to brief the issues for the court."
The other alleges, "The defendant received ineffective assist-
ance of counsel when despite the urgings of the defendant[,]
counsel would not call witnesses who would have provided
corroboration that the defendant was in the area of the car wash
for some time and had a lawful purpose for being there."

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to sup-
press based on a claimed violation of the Fourth Amendment,
an appellate court applies a two-part standard of review.
Regarding historical facts, an appellate court reviews the trial
court's findings for clear error, but whether those facts trig-
ger or violate Fourth Amendment protections is a question of
law that an appellate court reviews independently of the trial
court's determination.[2]

[2] In reviewing a criminal conviction for a sufficiency of
the evidence claim, whether the evidence is direct, circum-
stantial, or a combination thereof, the standard is the same:
An appellate court does not resolve conflicts in the evidence,
pass on the credibility of witnesses, or reweigh the evidence;
such matters are for the finder of fact. The relevant question
for an appellate court is whether, after viewing the evidence in
the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime
beyond a reasonable doubt.[3]

[3,4] Whether a claim of ineffective assistance of trial coun-
sel can be determined on direct appeal presents a question of
law, which turns upon the sufficiency of the record to address
the claim without an evidentiary hearing or whether the claim
rests solely on the interpretation of a statute or constitutional
requirement.[4] In reviewing claims of ineffective assistance

---

[2] *State v. Briggs, ante* p. 84, 953 N.W.2d 41 (2021).

[3] *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

[4] *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## ANALYSIS

### Motion to Suppress

We start by addressing the State's waiver argument. The State contends that Lowman waived his suppression claim to some of the evidence—specifically, those items found as a result of the search of his person—when he failed to renew an objection to that evidence based on his motion to suppress. We agree.

[5-7] Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review.[6] The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal.[7] Furthermore, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial.[8]

At numerous times during the trial, Lowman's counsel objected and renewed the motion to suppress when the State offered exhibits into evidence. However, counsel did not impose an objection to specifically renew the motion to

---

[5] *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020), *cert. denied* ___ U.S. ___, 141 S. Ct. 415, 208 L. Ed. 2d 119.

[6] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[7] *Id.*

[8] *Id.*

suppress when the State offered into evidence the digital scale, the torch-style lighter, bags containing the white crystalline substance, and the weight contained in the black bag found on Lowman. Instead, Lowman's counsel imposed objections based on such matters as foundation, authentication, and chain of custody. Nor did counsel renew an objection based on the motion to suppress when a forensic chemist testified that the bags contained methamphetamine. The objection and renewal of the motion to suppress at the beginning of trial did not preserve the issue for review when no objection was made during trial to the receipt of items of evidence found during a search. Accordingly, we conclude Lowman failed to preserve the suppression issue with regard to the evidence found during the search of his person.

Before analyzing Lowman's interactions with law enforcement, we recount the three tiers of police-citizen encounters under Nebraska law and the law regarding seizures in the context of the Fourth Amendment.

[8] The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning.[9] This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection.[10]

[9] The second tier, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*,[11] is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[12] This type of encounter is considered a seizure sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts

---

[9] *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020).

[10] *Id.*

[11] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[12] See *State v. Saitta, supra* note 9.

sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.[13]

[10] The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention.[14] The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.[15]

[11,12] Plainly, not every police-citizen encounter rises to the level of a seizure. A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[16] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[17] A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.[18]

We first address Lowman's initial encounter with Murray. Lowman claims the initial approach was unjustified and unnecessary because he was in a place open to the public and Murray saw no illegal activity. The State responds that no level of suspicion was needed, because the initial contact was a consensual encounter rather than a *Terry* stop. We agree with the State.

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019).

The interaction started with noncoercive questioning. Murray did not activate his cruiser's overhead lights or sirens prior to approaching Lowman's vehicle on foot. As Murray approached, Lowman began to exit his vehicle. Murray did not direct Lowman to do so. Murray did not display a weapon or show coercive authority. His communication with Lowman was casual, rather than authoritative. We conclude that this interaction amounted to a first-tier police-citizen encounter, and thus, it was outside the protections of the Fourth Amendment.

[13,14] The encounter developed into a tier-two investigatory stop when Murray advised Lowman that he was being detained. An investigatory stop of a person requires that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.[19] Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis.[20] In determining whether a police officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience.[21]

Murray had reasonable suspicion to believe a crime had occurred based on the totality of the circumstances. In addition to observing Lowman's loitering, Murray observed in Lowman's vehicle a car stereo with wires extending out on the passenger seat and a metal pipe protruding from the space between the driver's seat and the center console. Based on Murray's training and experience, he believed the pipe, along with the torch-style lighter held by Lowman, could be used

---

[19] *State v. Saitta, supra* note 9.

[20] *Id.*

[21] *Id.*

for smoking controlled substances. Further, Lowman admitted to being a marijuana user, was fidgety, spoke rapidly, and provided some answers that did not make sense. He also admitted to having a machete "tucked down" in his vehicle, which Murray believed to constitute a concealed weapon. Murray had a reasonable suspicion based on specific and articulable facts that Lowman had committed a crime.

We next turn to the warrantless search of Lowman's vehicle. First, we recall the governing law. Then, we apply it to the facts presented here.

[15-17] Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions.[22] The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.[23] This court has recognized that among the established exceptions to the warrant requirement is the automobile exception.[24] The automobile exception applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.[25]

The automobile exception applies here. Lowman's vehicle was capable of being driven, and Murray observed what he believed to be a pipe for ingesting narcotics. His belief, though later shown to be incorrect, was bolstered by Lowman's admission to being a marijuana user and possession of a torch-style lighter commonly used for smoking controlled substances. Further, Lowman informed Murray that he had a machete in the vehicle, but Murray did not readily see the machete. Viewed objectively, these facts supplied probable

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *State v. Lang, supra* note 5.

cause to believe contraband or evidence of a crime would be found inside the vehicle.

Because the district court's findings of historical fact were not clearly erroneous and we find no Fourth Amendment violation, we conclude the court properly overruled Lowman's motion to suppress.

## Sufficiency of Evidence

Lowman next contends that there was insufficient evidence to support the verdict. The argument in his brief mentions only the conviction concerning the machete's being a concealed weapon. Because an alleged error must be specifically argued in order to be considered,[26] we limit our analysis accordingly.

In connection with Lowman's argument, he advocates for application of the "accused's rule" when reviewing circumstantial evidence. Recently, in *State v. Stack*,[27] we rejected an invitation to return to the accused's rule. At oral argument, Lowman's counsel forthrightly conceded that *Stack*—released after counsel filed Lowman's appellate brief—controlled. For the same reasons explained in *Stack*, we yet again decline to apply the accused's rule.

[18] The sufficiency analysis is driven by the elements of the offense and our standard of review. The offense of carrying a concealed weapon is committed when a person "carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon."[28] Under our standard of review, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the machete was "concealed on or about [Lowman's] person," as provided in § 28-1202.[29] A weapon is concealed on or about the person if it is concealed in such proximity to

---

[26] See *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

[27] See *State v. Stack, supra* note 3.

[28] Neb. Rev. Stat. § 28-1202(1)(a) (Reissue 2016).

[29] See *State v. Senn*, 295 Neb. 315, 888 N.W.2d 716 (2016).

the driver of an automobile as to be convenient of access and within immediate physical reach.[30]

Here, the State adduced sufficient evidence regarding the machete to support the concealed weapon conviction. The machete, located in the vehicle's center console area, was easily accessible and within Lowman's immediate physical reach. In urging that the machete was not concealed, Lowman relies heavily on an officer's testimony that the machete's handle was visible from outside the passenger-side door. But Murray did not see the machete when he looked in the vehicle. Viewing the evidence in the light most favorable to the State, we conclude the evidence supported the conviction for carrying a concealed weapon.

### Ineffective Assistance of Counsel

[19] Finally, Lowman assigns that trial counsel, who was different from appellate counsel, provided ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[31] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[32]

[20,21] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[33] But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal.[34] The determining factor is

---

[30] *Id.*

[31] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[32] *State v. Lang, supra* note 5.

[33] *Id.*

[34] *Id.*

whether the record is sufficient to adequately review the question.[35] The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[36] We turn to Lowman's two specific allegations of deficient performance.

[22] First, Lowman claims counsel provided ineffective assistance in several respects related to the motion to suppress. According to Lowman's assignment, counsel was ill prepared and failed to brief the issues. But this allegation is broad and conclusory. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.[37] Lowman failed to allege what case law should have been provided or how it would have persuaded the court to grant the motion to suppress. We conclude these allegations of ineffective assistance of counsel were not made with sufficient particularity.

Lowman's claim that counsel filed the motion to suppress at the last minute is refuted by the record. A motion containing identical allegations was filed nearly 4 weeks earlier, but counsel was unable to pursue it due to Lowman's failure to appear at the hearing. Lowman additionally claims that the late filing deprived him of the ability to assemble evidence and testimony to refute the statements of the officers at trial. But he had the opportunity to attack the credibility of the officers during the jury trial, and he does not inform us of what evidence he would have offered. This aspect of his claim lacks the specificity required to allege deficient conduct.

Lowman's second claim asserts that counsel should have called as witnesses two individuals. One was a friend whom Lowman had dropped off in the area at around 3 a.m. The

---

[35] *Id.*

[36] *Id.*

[37] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

other was a clerk at a convenience store with whom Lowman spoke after dropping off his friend. Lowman wished to have these individuals testify that he was not in the area for an unlawful purpose.

[23,24] We are mindful that the entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable.[38] Further, trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel.[39] Here, whatever knowledge these individuals had about what Lowman was doing 2 hours prior to the encounter with law enforcement is of little relevance, particularly when considering that he was found to be in possession of methamphetamine and concealed weapons and charged accordingly. We conclude that counsel did not perform deficiently in declining to call these individuals as witnesses.

## CONCLUSION

We conclude that the court properly overruled Lowman's motion to suppress and that evidence concerning the machete supported the conviction for carrying a concealed weapon. With regard to Lowman's assignments of ineffective counsel that were alleged with sufficient particularity, the record either refuted the allegations or showed that trial counsel's performance was not deficient. We affirm the district court's judgment.

Affirmed.

---

[38] *State v. Oliveira-Coutinho*, 304 Neb. 147, 933 N.W.2d 825 (2019).

[39] *State v. Lang, supra* note 5.