IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BARTELS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN J. BARTELS, APPELLANT.

Filed October 8, 2024.    No. A-23-716.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

W. Randall Paragas for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Justin J. Bartels appeals his conviction and sentence for driving under the influence, serious bodily injury, entered following a jury trial in the Lancaster County District Court. Bartels argues that the district court erred in overruling his motion to suppress and in imposing an excessive sentence. We affirm.

## BACKGROUND

In the early morning of April 28, 2021, Bartels and two companions, Brandon L'Heureux and Jessica Hancock, were wrapping up a night of "bar hopping" around Lincoln, Nebraska. At closing time of the last bar, the group headed to Bartels' truck and, according to Hancock, Bartels told L'Heureux to drive because Bartels was "to [sic] fucked." L'Heureux originally got in the driver's seat but soon hit the median. Upset, Bartels took over driving.

- 1 -

At approximately 2 a.m. on April 28, 2021, law enforcement was dispatched to the scene of a car crash. When Deputy Jason Schneider of the Lancaster County Sheriff's Office arrived at the scene, he made contact with L'Heureux, who was bleeding significantly from his head and nose and had the smell of alcohol emitting from his person. L'Heureux informed Schneider he had called the 911 emergency dispatch number because he and the other car occupants needed medical attention. He then directed Schneider to where Bartels and Hancock were waiting.

Upon making contact, Schneider saw that Bartels was bleeding from a significant head wound and appeared to need medical attention. Schneider testified at trial that Bartels was repeatedly stating that his "eye was out," but his injuries were so significant that Schneider could not tell whether Bartels' eye was in the socket. Meanwhile, Hancock had minimal visible injuries, but was complaining of significant pain in her neck, back, and ribs. Her complaints led law enforcement to believe that she had suffered internal injuries.

While waiting for emergency medical personnel, Hancock told Schneider that Bartels had been driving the truck before the impact; it was confirmed at the scene that Bartels was the registered owner of the vehicle. Schneider also testified that all three car occupants admitted that they had been consuming alcohol prior to the accident.

At the hospital, the occupants' injuries were assessed. Hancock had suffered several vertebrae fractures and lacerations on her kidney and spleen, her kidney injury being potentially life threatening. Bartels had a significant laceration across the left side of his face and fractures to his head and nose. L'Heureux had a concussion and fractured nose. Toxicology was performed on all three individuals, in accordance with hospital procedures for treating trauma patients.

At the hospital, Schneider observed that Bartels had signs of alcohol impairment. Bartels was animated, aggressive, appeared confused, slurred his words, and had the smell of alcohol emitting from his person. Schneider intended to execute a breathalyzer test to verify that Bartels' intoxication was above the legal limit for driving; however, Bartels refused consent for the procedure. Schneider also requested Bartels' consent for a blood draw to test intoxication, which he also refused.

Schneider called in Deputy Samuel Bachman to supervise Bartels and left the room to draft a warrant that would authorize a blood draw without Bartels' consent. Before finishing the warrant, Bachman informed Schneider that Bartels was being taken for emergency surgery to address his significant head and facial wound. Because Schneider feared that surgery and the associated medications would alter the results of the blood draw, Schneider instructed Bachman to execute a warrantless blood draw under exigent circumstances. After the warrantless blood draw, a warrant was drafted and approved to test the blood sample.

Bartels was charged by information with one count of DUI causing serious bodily injury, a Class IIIA felony. Bartels filed a motion to suppress, arguing that the warrantless blood draw was a violation of his Fourth Amendment right to be free of unreasonable searches by the government and requesting the court suppress the blood test results. He also argued his statements made at the hospital were the product of a custodial interrogation in violation of his *Miranda* rights, and requested the court also suppress those statements at trial.

The district court held a hearing on Bartels' motion to suppress evidence concerning the warrantless blood draw and the statements allegedly made in violation of *Miranda*. Bartels argued that a blood draw is a search under the Fourth Amendment and no exigent circumstances existed

to justify law enforcement's blood draw without a warrant and without Bartels' consent, thus violating Bartels' right to be free from unreasonable searches by the government. He also argued that he was subject to custodial interrogation while hospitalized, and that his statements were made without prior *Miranda* warnings. Bartels requested the court suppress the blood test results and his statements. The district court overruled the motion to suppress, finding Bartels' imminent surgery qualified as exigent circumstances to justify the warrantless search and that he was not in custody at the time his statements were made.

At trial, Bartels' counsel objected to testimony of Schneider and the hospital phlebotomist who drew Bartels' blood at the direction of law enforcement, citing Fourth Amendment grounds and renewing his motion to suppress. Although his objections were overruled, the court granted defense counsel a continuing objection as to both witnesses and the specific line of questioning pertaining to the warrantless blood draw. After these objections, the test results of the warrantless blood draw were introduced through another witness. Bartels objected to the evidence only on foundational grounds. Bartels' counsel did not cite Fourth Amendment grounds or renew his motion to suppress with respect to the results. The court overruled the foundational objection and the blood test results were admitted which showed Bartels' blood alcohol level to exceed the legal limit.

Other evidence introduced at trial confirmed that Bartels was the driver at the time of the accident and the treating hospital physician opined Hancock's injuries met the statutory definition of "serious bodily injury."

The jury found Bartels guilty of DUI causing serious bodily injury, a Class IIIA felony. The district court accepted the verdict and found Bartels guilty of that charge. Bartels was sentenced to a term of imprisonment of 3 years, followed by 18 months' post-release supervision. Further, Bartels' driver's license was revoked for a period of 8 years. He was given no credit for any days previously served.

Bartels now appeals, arguing the district court erred in denying his motion to suppress and abused its discretion in sentencing him.

## ASSIGNMENTS OF ERROR

Bartels raises on appeal two assignments of error, restated as (1) law enforcement's warrantless blood draw was a violation of Bartels' Fourth Amendment rights and the district court erred in denying his motion to suppress the test results, and (2) the district court abused its discretion in imposing an excessive sentence and failing to place Bartels on probation.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Reyes*, 18 Neb. App. 897, 794 N.W.2d 886 (2011).

## ANALYSIS

*Motion to Suppress.*

Bartels claims that the district court erred by overruling his motion to suppress. We need not reach the merits of Bartels' assigned error, however, because he failed to preserve his motion to suppress at trial.

Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *State v. Montoya, supra*. Furthermore, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial. *State v. Oldson, supra*.

In *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021), the defendant filed a pretrial motion to suppress, requesting the court suppress all evidence obtained as a result of law enforcement's allegedly unconstitutional search of his car and his person. His motion was overruled. See *State v. Lowman, supra*. At trial, defense counsel objected and renewed his motion to suppress to some, but not all, exhibits offered by the State. *Id*. Instead, regarding the introduction of evidence found on the defendant during the search of his person, defense counsel objected based on matters such as foundation, authentication, and chain of custody. *Id*. Defense counsel also failed to renew an objection based on the motion to suppress when a forensic chemist testified that bags found during this search contained methamphetamine. *Id*.

On appeal, defendant argued the trial court erred in overruling his motion to suppress. *Id*. The Nebraska Supreme Court held that the renewal of the motion to suppress evidence found in defendant's car did not preserve his motion to suppress evidence found on his person, to which no objection was made. *Id*. Accordingly, the court concluded the defendant failed to preserve the suppression issue concerning the evidence found on his person and thus declined to address whether the trial court erred in overruling his motion to suppress that evidence. *Id*.

In the present case, Bartels filed a pretrial motion to suppress the results of the chemical test performed upon his blood. The motion also sought to exclude statements Bartels made; however, Bartels does not raise this issue on appeal. The motion was denied.

Subsequently, at trial, Bartels objected to the introduction of testimony by Schneider and the phlebotomist involving the warrantless blood draw. The court granted Bartels a continuing objection after overruling his objections. However, the State subsequently called the forensic scientist who performed the chemical test of Bartels' warrantless blood draw and ultimately offered the test results as an exhibit. Bartels made only a foundational objection to the introduction of the test results and he made no objection to the forensic scientist's testimony quantifying the results as ".117 grams of ethanol per 100 milliliters of blood." At no time did Bartels renew his motion to suppress or cite Fourth Amendment grounds regarding the blood test results.

On appeal, Bartels assigns error to the denial of his motion to suppress the blood test results; however, to preserve this issue for appeal, Bartels was required to object on Fourth Amendment grounds or renew his motion to suppress. See *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016); see, cf, *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022) (finding denial of motion to suppress preserved by objection at trial to blood test results on basis of motion to suppress). Although Bartels objected to the evidence on foundational grounds, his objection does not preserve the issue of Fourth Amendment violation for appellate review. See *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Furthermore, the court's grant of a continuing objection to testimony of Schneider and the phlebotomist did not extend to the forensic scientist's testimony. See *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020) (continuing objections are not applicable to testimony given by different witness when no objection is made to that witness). Bartels, therefore, failed to preserve any error regarding the admission of the blood test results.

*Excessive Sentence.*

Bartels assigns that the district court abused its discretion by imposing an excessive sentence and not placing him on probation. Because the sentence is within the statutory guidelines, we review the sentence imposed for an abuse of discretion. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). We find that the district court did not abuse its discretion in sentencing Bartels.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Bartels was convicted of one count of DUI causing serious bodily injury under Neb. Rev. Stat. § 60-6,198 (Reissue 2021), a Class IIIA felony. He was also subject to a license restriction for a period of at least 60 days and no more than 15 years. A Class IIIA felony carries a maximum of 3 years' imprisonment and 18 months' post-release supervision or $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Bartels' sentence of 3 years' imprisonment with 18 months' post-release supervision and a license restriction for 8 years is within the statutory limits.

Bartels nevertheless claims that the district court abused its discretion in imposing his sentence, arguing that many of the statutory factors addressed in the presentence investigation (PSI) resulted in four out of eight factors being rated "low risk" or "very low risk." Brief for appellant at 19. Bartels contends that "low risk" is compounded by the fact Bartels had no motivation to commit the crime nor cause harm. He further alleges there is a low likelihood of the circumstances that led to the crime reoccurring.

At the sentencing hearing, the district court informed the parties it had reviewed the PSI. The PSI showed Bartels was 31 years old at the time the report was prepared. He was engaged to

be married and had no biological children, although he was a stepfather to his fiance's son, he had a high school education, and was employed and had been for multiple years. His criminal history showed multiple alcohol related offenses, all of which were committed while Bartels was a minor under Nebraska law. On the Level of Service/Case Management Inventory, Bartels scored in the overall medium/low risk to reoffend category.

On the other hand, the PSI reflected Bartels had scored as a high risk in the antisocial pattern and pro-criminal attitude categories. The PSI explained that Bartels had an apparent disregard for the feelings of others and the reduced ability, or inability, to experience guilt or shame. Moreover, the PSI reported that Bartels continued to deny that he was driving at the time of the accident. The sentencing judge noted that Bartels continuously failed to take responsibility for his actions and neglected to consider the impact his choice had on the lives of the other passengers.

Bartels contends the district court used unreasonable factors in arriving at its sentence. He argues the court's assertions that "people who engage in drinking and driving often times are fairly, if not significantly, functional in the rest of their lives" and "[t]hat is generally how those people present" constituted negative inferences about an entire class of people being used to justify the enhancement of sentence on an individual. Brief for appellant at 19. He also claims the district court unjustly considered factors like Bartels' employment and positive familial relationships because it stated such factors "cut both ways in a situation like this," using otherwise positive inferences and Bartels' apparent "ability to make good decisions" to justify harsher punishment. *Id.* at 19-20.

Contrary to Bartels' interpretation, we read the court's statements as giving context to its decision. The court noted that Bartels' ability to have a job, have valuable relationships, and have a generally normal life indicated that Bartels also was able to make good decisions and exercise good judgment. The court expressed that, because Bartels was likely capable of good decision making, it was concerning he had made the choice to drive rather than consider whether his actions would permanently alter the lives of others. The court clarified that while Bartels appeared to be functional in his daily life, and had positive qualities and minimal criminal history, it also was required to consider the seriousness of the offense. The court found that Bartels' offense was "extremely serious."

After taking into consideration the statutory factors, the court found "the risk was substantial, during a period of probation, that [Bartels] would engage in criminal conduct, and I do find that a lesser sentence than I will impose here today absolutely would depreciate the seriousness of this crime and promote disrespect for the law." We find the district court did not consider any factors outside of those required by statute and the sentence imposed was not an abuse of discretion.

CONCLUSION

For the reasons above, we affirm.

AFFIRMED.

- 6 -