IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ARNESON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROCHELLE L. ARNESON, APPELLANT.

Filed November 10, 2025.    No. A-25-121.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

Leah J. Gleason, of FGH Law Office, for appellant.

Michael T. Hilgers, Attorney General, Jacob M. Waggoner, and Danielle Jewell, Senior Certified Law Clerk, for appellee.

RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

MOORE, Judge.

INTRODUCTION

Rochelle L. Arneson appeals her convictions for possession of a controlled substance (methamphetamine) and theft by receiving stolen property (value $500 or less) entered following a jury trial in the Buffalo County District Court. Arneson argues that the district court erred in overruling her motion to suppress and that the evidence was insufficient to support her convictions. We affirm.

STATEMENT OF FACTS

On December 12, 2023, Arneson was charged by information with possession of a controlled substance (methamphetamine), a Class IV felony in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2024). An amended information was filed on April 4, 2024, again charging Arneson with possession of a controlled substance (methamphetamine), along with theft

- 1 -

by receiving stolen property (value $500 or less), a Class II misdemeanor in violation of Neb. Rev. Stat. § 28-517 (Reissue 2016).

On March 11, 2024, Arneson filed a motion to suppress, seeking to suppress "any statements of the Defendant, or evidence arising from the illegal stop of the Defendant, the illegal search of the Defendant's vehicle, and the illegal arrest of the Defendant."

The district court held a hearing on Arneson's motion to suppress on May 14, 2024. Jon Alstrom, a "K9 officer" with the Kearney Police Department, testified that he conducted a traffic stop of Arneson's vehicle after it had failed to stop at an intersection. Alstrom made contact with the two occupants of the vehicle; the male driver was identified as Greg Hergott and the female passenger as Arneson. The traffic stop ultimately resulted in alerts by Alstrom's drug detection dog and a search of the vehicle produced methamphetamine and bedding from a hotel. Alstrom's body camera footage, which captured the traffic stop that led to Arneson's arrest, was entered into evidence.

The district court overruled Arneson's motion to suppress. The court found that Alstrom had reasonable suspicion to conduct a traffic stop after witnessing the vehicle run a stop sign. The court noted that during Alstrom's contacts with Arneson and Hergott, Alstrom determined that the vehicle had been driving erratically, and that both occupants had criminal histories involving drug offenses, were exhibiting signs of extreme nervousness, and had inconsistent responses to some of Alstrom's questions. Therefore, the court found that the totality of the circumstances provided Alstrom with reasonable suspicion to prolong the traffic stop until he deployed his drug detection dog. The alerts by the drug detection dog then created probable cause to search the vehicle. Further, the court noted that several of Arneson's statements to Alstrom had been made after Alstrom had given Arneson a *Miranda* warning.

A jury trial was held on November 19, 2024. Alstrom testified that he was on duty with his police service dog that was trained in drug detection. While on duty, Alstrom noticed a vehicle abruptly changing lanes before circling back in the same direction Alstrom had observed the vehicle coming from. As Alstrom approached, he could see the occupants of the vehicle looking in the review mirror to see if Alstrom was following. The vehicle then ran a stop sign, continued to drive in circles, and made a wide turn into an outside lane.

Alstrom initiated a traffic stop of the vehicle and approached the vehicle on the passenger side. Alstrom testified that Arneson "immediately started crying and saying she was sorry, even before I could explain the reason for the stop or gather any identification from them." Alstrom's initial observations of Hergott and Arneson included their rapid speech and heightened emotions. Arneson's chest was rising and falling quickly, and her hands were trembling. Alstrom noted that this reaction was not typical and indicated extreme nervousness.

Hergott informed Alstrom that his driver's license was suspended. Both Hergott and Arneson were "almost pleading" with Alstrom not to arrest Hergott but to give him a warning for the suspended license. Both Hergott and Arneson were apologetic to Alstrom. Alstrom decided to take Hergott back to his patrol car while Alstrom conducted a records check to confirm that Hergott's license was suspended. At that point, Alstrom determined that Arneson was the registered owner of the vehicle. Alstrom also briefly examined Arneson's criminal history, which included prior arrests for drug offenses.

Both Hergott and Arneson denied having any controlled substances in the vehicle and denied consent to search. Alstrom asked what items in the vehicle belonged to each person. Hergott claimed he had a bag, but "would not divulge what bag or where it was or anything like that." Arneson stated that "pretty much everything in the vehicle belonged to her."

Based on Hergott's driving, Hergott's and Arneson's nervous behavior, and Alstrom's conversation with Hergott, Alstrom decided to deploy his drug detection dog around the vehicle. Alstrom instructed Arneson to exit the vehicle so that Alstrom could deploy his dog, but Arneson refused to comply for approximately 5 minutes. Once deployed, the drug detection dog alerted to the presence of drugs at the rear door of the passenger side of the vehicle.

Based on the drug detection dog's alerts, Alstrom then conducted a search and found a duffelbag on the passenger side of the backseat area. Inside the duffelbag were men and women's clothing, toiletries, and a hard-sided glasses case. The glasses case contained used needles and a small clear bag of a white powdery substance. Alstrom conducted an initial field test of the substance, which was positive for methamphetamine. Further testing at the Nebraska State Crime Lab confirmed the substance as methamphetamine. Additionally, the parties stipulated at trial that the substance found during the search was methamphetamine.

Following the discovery of the methamphetamine, Arneson was arrested. Alstrom read Arneson her *Miranda* rights, and she agreed to speak with him. During their conversation, Arneson informed Alstrom that she used to keep her methamphetamine in a glasses case. Arneson told Alstrom that almost all the items in the back of the vehicle belonged to her and that the drugs "was old stuff from before." Arneson also stated "it's got to be mine" three times in her conversation with Alstrom. Alstrom testified that Hergott never claimed possession of the methamphetamine.

During the search of the vehicle, Alstrom also found a large trash bag full of white bed sheets in good condition. Arneson had informed Alstrom that she and Hergott had spent the prior night at the Holiday Inn. In video captured by Alstrom's body camera, another officer approached Alstrom and stated that he had spoken with the manager of the Holiday Inn, who identified Arneson and Hergott as guests from the night before and confirmed that the bedding was from the Holiday Inn. The manager believed that Arneson and Hergott had taken the sheets from a cleaning cart, as the sheets from their hotel room were not missing. The manager reported seeing Arneson and Hergott leaving the Holiday Inn with a large black trash bag.

At trial, Alstrom's body camera footage from the day of the traffic stop was again offered into evidence. Arneson objected based on foundation and improper character evidence, which objections were overruled by the district court. Additionally, photographs of the glasses case and its contents were offered into evidence. Arneson made foundation objections to each of the photographs, which were also overruled.

Hergott testified that the drugs and paraphilia found in Arneson's vehicle belonged to him. On the day of the traffic stop, he had gone to a friend's house in Kearney to pick up the methamphetamine and syringes. Hergott refused to name the friend or provide the address of the house. Hergott noted that he usually keeps his drugs in an eyeglasses case or zippered bag. According to Hergott, Arneson was unaware that Hergott had relapsed or that there were drugs in her vehicle, and ultimately Arneson "got arrested the same day I did for something she wasn't even doing."

Hergott also testified that he had stayed in a Holiday Inn the night prior to his arrest but denied taking the bedding from the hotel. Hergott had previously dated a woman who worked as a housekeeper at the Holiday Inn and had acquired the bedding found in Arneson's vehicle from his former girlfriend.

At the time of trial, Hergott and Arneson were no longer in a romantic relationship. Hergott stated that he was only testifying in the matter because he had been subpoenaed by Arneson.

Todd Ochsner, a community service officer with the Buffalo County Sheriff's Office, testified that he oversaw the courthouse security. On the day of trial, Hergott had approached Ochsner and engaged him in conversation after coming through the security checkpoint. After some small talk, Hergott told Ochsner that "his girlfriend was not going to be guilty because the drugs were his."

After deliberating for an hour, the jury found Arneson guilty of both counts. The jury determined the value of the stolen property to be $150. The district court sentenced Arneson to 3 years' probation and ordered a 90-day jail sentence to be served as part of probation, for the possession of a controlled substance (methamphetamine) conviction. The court sentenced Arneson to 2 years' probation for the theft by receiving stolen property (value $500 or less) conviction. The court ordered the terms of probation to run concurrently.

Arneson appeals.

### ASSIGNMENTS OF ERROR

Arneson assigns that (1) the district court erred in overruling her motion to suppress, and (2) the evidence was insufficient to support Arneson's convictions.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

### ANALYSIS

*Motion to Suppress.*

Arneson claims that the district court erred by overruling her motion to suppress. We need not reach the merits of Arneson's assigned error, however, because she failed to preserve her motion to suppress at trial.

Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). Furthermore, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial. *State v. Oldson, supra*.

In *State v. Lowman, supra*, the defendant filed a pretrial motion to suppress, requesting the court suppress all evidence obtained as a result of law enforcement's allegedly unconstitutional search of his car and his person. His motion was overruled. At trial, defense counsel objected and renewed his motion to suppress to some, but not all, exhibits offered by the State. Instead, regarding the introduction of evidence found on the defendant during the search of his person, defense counsel objected based on matters such as foundation, authentication, and chain of custody. Defense counsel also failed to renew an objection based on the motion to suppress when a forensic chemist testified that bags found during this search contained methamphetamine.

On appeal, the Nebraska Supreme Court held that the renewal of the motion to suppress evidence found in defendant's car did not preserve his motion to suppress evidence found on his person, to which no objection was made. Accordingly, the court concluded the defendant failed to preserve the suppression issue concerning the evidence found on his person and thus declined to address whether the trial court erred in overruling his motion to suppress that evidence.

In the present case, Arneson filed a pretrial motion to suppress her statements to Alstrom and any "evidence arising" from the search of her vehicle. This motion was overruled. At trial, Arneson did not renew her motion to suppress, nor did she object based on her motion to suppress when the relevant evidence was presented. Arneson made only foundational and improper character evidence objections to Alstrom's body camera footage showing the traffic stop, search of Arneson's vehicle, and Arneson's incriminating statements. Arneson likewise made only foundational objections to the photographs of the recovered glasses case, and the syringes and methamphetamine which were found inside. At no time did Arneson cite Fourth Amendment grounds in her objections.

On appeal, Arneson assigns error to the denial of her motion to suppress all evidence obtained by the police as a result of her detention, arrest, and questioning, and search of her vehicle. However, to preserve this issue for appeal, Arneson was required to object on Fourth Amendment grounds or renew her motion to suppress. See *State v. Oldson, supra*. Although Arneson objected to the evidence based on foundation and improper character evidence, her objections do not preserve the issue of Fourth Amendment violation for appellate review. See *State v. Lowman, supra*. Arneson, therefore, failed to preserve any error regarding her statements to Alstrom and the evidence recovered during the search of her vehicle.

*Sufficiency of Evidence.*

Next, Arneson asserts that her convictions were not supported by sufficient evidence. She points to Hergott's testimony that the recovered methamphetamine belonged to him and that the bedding was given to him by a former girlfriend.

Arneson was charged with possession of a controlled substance (methamphetamine), in violation of § 28-416(3). Section 28-416 states in relevant part, "a person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony." See § 28-416(3). At trial, the parties stipulated that the substance found in Arneson's vehicle was methamphetamine. Thus, the only issue was whether Arneson possessed the methamphetamine.

Evidence at trial established that Arneson was the registered owner of the vehicle. Arneson stated to Alstrom that nearly everything in the vehicle belonged to her and that she used to keep her methamphetamine in glasses cases. Here, the methamphetamine was found in a glasses case. She also stated "it's got to be mine" three times to Alstrom. Though at trial Hergott testified that the methamphetamine was his, at the time of the traffic stop Hergott did not claim possession of the methamphetamine or the bag it was found in. Further, a portion of Hergott's testimony, specifically that he was no longer in a relationship with Arneson, was impeached by Ochsner's testimony regarding his recent conversation with Hergott.

The jury clearly made an implicit credibility finding when it found Arneson guilty of possession of a controlled substance (methamphetamine). In reviewing a conviction for sufficiency of the evidence, we do not pass on the credibility of witnesses and instead we recognize that it is a matter for the fact finder. See *State v. Lowman, supra*.

Arneson was also charged with theft by receiving stolen property (value $500 or less) in violation of § 28-517. Section 28-517 states in relevant part

> A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner.

See § 28-517.

Alstrom found a trash bag filled with white bedding during his search of Arneson's vehicle. Alstrom testified that the bedding was believed to be from the Holiday Inn. Hergott testified that he and Arneson stayed at the Holiday Inn the evening before the traffic stop. Alstrom's body camera footage demonstrates that the manager of the Holiday Inn had reported to the police that the bedding recovered in Arneson's vehicle belonged to the Holiday Inn and that Arneson and Hergott had walked out of the Holiday Inn carrying a large trash bag. Though Hergott provided a different explanation as to how he and Arneson came to possess the bedding, he did not originally deny that the bedding was from the Holiday Inn. Again, the jury clearly made an implicit credibility finding when it found Arneson guilty of theft by receiving stolen property (value $500 or less). We decline to disturb this finding on appeal.

Viewing the evidence in this case in the light most favorable to the prosecution, we conclude that the jury could have found the elements of possession of a controlled substance (methamphetamine) and theft by receiving stolen property (value $500 or less) had been proved beyond a reasonable doubt. This assignment of error fails.

## CONCLUSION

For the reasons stated herein, we affirm the convictions and sentences imposed by the district court.

AFFIRMED.